SUNSET INVESTMENTS, LTD. v. MURRAY SARGENT, JR., EBERHARD H. ROHM, AND FRANS J. J. VAN HEEMSTRA, TRUSTEES FOR ALWIN WEBER AND GATEWAY BANK

No. 8018SC901

(Filed 2 June 1981)

**Uniform Commercial Code § 36.1— letter of credit—independence from underlying contract**

Where plaintiff sold post office buildings in three towns to defendant trustees, plaintiff agreed to make certain warranties of those buildings, plaintiff agreed to deliver a letter of credit to secure its agreement to make improvements to the properties, defendant trustees notified plaintiff that they intended to call the letter of credit to pay for certain improvements to the building in Titusville, and plaintiff alleged that such notice constituted an anticipatory breach of the contract between plaintiff and defendant trustees because the letter of credit secured only the property in Smyrna, the trial court properly entered summary judgment for defendant trustees, since every letter of credit involves separate and distinct contracts and the contracts between the issuing bank and the beneficiary to pay money to the beneficiary upon demand must be kept chaste, that is, independent of the underlying contract between the purchaser of the letter and the beneficiary; the entire and sole thrust and theory of plaintiff's complaint and claim for relief was an attempt to require defendant trustees to apply the proceeds of the letter of credit according to the underlying contract between plaintiff and defendant trustees; the letter itself did not require documentation; and it was the responsibility of plaintiff, as purchaser of the letter, to instruct defendant bank to include in the letter such requirements for documentation as might reasonably be implemented by the bank as a condition of honor and payment. G.S. 25-5-114(1).

APPEAL by plaintiff from *Kivett, Judge.* Judgment entered 23 April 1980 in Superior Court, GUILFORD County. Heard in the Court of Appeals 2 April 1981.

Plaintiff's complaint alleges the following essential facts and circumstances. Plaintiff sold a post office building in Smyrna, Georgia to an investor represented by defendants Sargent, Rohm, and van Heemstra (S, R, and V) as trustees for the purchaser. Plaintiff also sold post office buildings in Titusville, Florida and Rock Hill, South Carolina to another purchaser, who was also represented by S, R, and V as trustees. As a part of the sale-purchase transaction for Titusville and Rock Hill, plaintiff agreed with S, R, and V to make certain warranties of those buildings, and as security for those warranties, S, R, and V withheld $20,000.00 from the proceeds of that sale. Later, it was agreed

that $15,000.00 of that $20,000.00 would be released to plaintiff on the condition that plaintiff deliver a bond or an irrevocable letter of credit to secure its agreement to make certain improvements to the Titusville and Rock Hill properties. Subsequently, on 21 December 1977, a letter of credit issued by defendant Gateway Bank (Bank) in the amount of $20,000.00 was tendered to S, R, and V. This credit was returned by S, R, and V as unacceptable because S, R, and V contended that it attempted to secure the warranty of the Smyrna post office in addition to Titusville and Rock Hill. S, R, and V, requested that separate letters of credit be issued for the two transactions. Subsequently, plaintiff obtained another letter of credit from defendant Bank, dated 13 November 1978, in favor of S, R, and V to secure the improvements to the Smyrna building. On 1 December 1978, S, R, and V notified plaintiff that they intended to call the 13 November 1978 credit to pay for certain improvements to the Titusville building. Such notice from S, R, and V constituted an anticipatory breach of the contract between plaintiff and S, R, and V, in that the 13 November 1978 credit secured only the Smyrna building. Plaintiff would suffer irreparable damage if the 13 November credit is called to pay for improvements to Titusville.

Plaintiff sought to temporarily enjoin defendant Bank from disbursing any funds on the 13 November 1978 letter of credit, a judgment declaring that the terms of the contract between plaintiff and S, R, and V require that the funds available under that credit be used only to pay for the agreed improvements to the Smyrna building, and a permanent injunction enjoining defendant Bank from disbursing payments under the 13 November 1978 credit "unless such payments conform to the agreement between the Plaintiff and Defendants [S, R, and V] that the funds be used to pay for improvements at the Smyrna, Georgia property exclusively." Plaintiff obtained an order temporarily enjoining defendant Bank from disbursing funds under the 13 November credit.

After the pleadings were joined, S, R, and V moved for summary judgment. In support of their motion, they presented the affidavit of defendant Rohm, detailing events and transactions between plaintiff and S, R, and V pertaining to the Smyrna, Titusville and Rock Hill buildings, supported by numerous exhibits including estimates, bids, and proposals pertaining to need-

ed repairs to the Smyrna building. In response to S, R, and V's motion and supporting papers, plaintiff presented only its verified complaint. The trial judge granted defendants' motion for summary judgment and plaintiff has appealed.

*Hatfield & Kinlaw, by Kathryn K. Hatfield and Vance C. Kinlaw, for plaintiff appellant.*

*Gabriel, Berry & Harris, by M. Douglas Berry, for defendant appellees.*

WELLS, Judge.

The dispositive question in this law suit is whether the letter of credit issued by defendant Bank dated 13 November 1978 in favor of defendants S, R, and V is a "clean" credit, requiring no documentation for honor and payment; or, whether it is a "documentary" credit, requiring documentation for honor and payment.

A brief, general discussion of the nature and use of letters of credit may help clarify our task.[1] Letters of credit, in one form or another, have been used for centuries to facilitate commercial transactions. Although traditionally used more frequently in international trade, recent years have seen the use of letters of credit in a wide variety of transactions between parties in the continental United States. While letters of credit are more traditionally used to facilitate the sale and movement of goods (various forms of merchandise, crops, raw materials, etc.), there has been a growing tendency in recent years to employ their use in other commercial transactions, including construction contracts. A letter of credit is an engagement by a bank, a finance company or other issuer made at the request of its customer or some other person who seeks to secure an obligation to a third person which will arise in the future. The engagement is that if certain things are done, either by way of presentation of pieces of paper

---

1. Our principal sources for these background comments are a comment by Charles B. Harris, II, entitled *Commercial Letters of Credit: Development and Expanded Use in Modern Commercial Transactions,* 4 Cumberland-Samford L. Rev. 134 (1973) and a presentation by Professor Soia Mentschicoff to a symposium of the Section of Corporation, Banking and Business Law of the American Bar Association, found in 19 Bus. Law 107 (1963). *See also,* Edwards, *Introduction to the Methods of Payment Involving Banks,* 4 N.C. J. Int'l L. & Com. Reg. 207, 211-14 (1979).

or simply by making a demand for payment of a draft or acceptance, payment or acceptance will take place.

Three contracts are involved in the typical letter of credit transaction: 1) the contract between the issuer (bank) and the account party (customer) for the issuance of the credit; 2) the letter of credit itself, a contract between the issuer and the beneficiary; and 3) the underlying agreement between the beneficiary and the account party. One of the most crucial features of the commercial letter of credit is its complete separation from the underlying transaction. The issuer has no concern with the agreement between its customer and the beneficiary and thus has no duty to see that the agreement is fulfilled.

The law of letters of credit transaction, as it has evolved over time, has been impacted and shaped by codification in the Uniform Commercial Code[2] and by the formulation and publication from time to time by the International Chamber of Commerce of uniform customs and practices for the issuing, interpretation and use of such credits.

Against this general background, we note that both pertinent provisions of the UCC and International Chamber of Commerce Publication 290, the 1974 revision of the ICC's Uniform Customs and Practice for Documentary Credits, have a bearing upon, but do not entirely control, the question before us. First, it must be recognized that by their very nature, the uniform customs and practices formulated and promulgated by the ICC are essentially dynamic, recognizing as they should the expanding and changing use of letters of credit in commerce. Second, Official Comments and North Carolina Comments to the pertinent sections of the UCC make it clear that the drafters of the Code intended for the Code provisions to serve more as a ready reference source of existing law than as a final set of iron-clad rules. *See*, Official Comments to G.S. 25-5-101 and 102, and the North Carolina Comment to G.S. 25-5-101. Third, where a particular letter refers to and incorporates by reference the provisions of the ICC Publication, the argument can be made that the parties have, by contractual terms, replaced the UCC provisions with the ICC rules; or, at least, accepted the ICC rules as binding where the UCC is either

---

2. Codified in North Carolina in Article 5 of Chapter 25 of the General Statutes.

silent or in conflict with the rules laid down in the ICC Publication. In resolving the question before us, we must, therefore, resort to four basic sources: 1) the UCC; 2) ICC Publication 290; 3) existing case law, and 4) learned commentaries.

From these four sources, one bright star emerges to guide us in the search for enlightened judicial resolution of the problem before us: It is emphasized by all the sources we have found that the basic aspect of the successful use of letters of credit lies in recognizing at the threshold that every letter of credit involves separate and distinct contracts; and that the contract between the issuing bank and the beneficiary to pay money to the beneficiary upon demand (and documentation if called for) must be kept chaste — independent of the underlying contract between the purchaser of the letter and the beneficiary. ICC Publication 290 provides in pertinent part that "Credits, by their nature, are separate transactions from the sales or other contracts on which they may be based and banks are in no way concerned with or bound by such contracts." The UCC, G.S. 25-5-114(1) provides: "An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary." For cases in which this fundamental aspect of the law of letters of credit is enunciated and affirmed, *see, O'Grady v. Bank,* 296 N.C. 212, 232, 250 S.E. 2d 587, 600 (1978) and cases cited therein. *See also, KMW Intern. v. Chase Manhattan Bank, N.A.,* 606 F. 2d 10 (2d Cir. 1979); *Chase Manhattan Bank v. Equibank,* 550 F. 2d 882 (3rd Cir. 1977); *Barclays Bank D.C.O. v. Mercantile National Bank,* 481 F. 2d 1224 (5th Cir. 1973), *cert. dismissed,* 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed. 2d 96 (1974). It is clear that plaintiff in the case now before us has not followed this guiding star, but has steered a course which has grounded its claim on the shoals of a disputed underlying contract.

A careful reading of plaintiff's complaint discloses the fatal flaw. We quote in pertinent part:

The Plaintiff will suffer irreparable damage if the letter of credit dated November 13, 1978, is called by the Defendants, Sargent, Rohm and van Heemstra, to pay for improvements to the Titusville property, since the Plaintiff will be forced to engage in expensive litigation in the state of

New York, the attorney's fees and expenses of which will not be recoverable, in order to recover any amount paid by the Defendant, Gateway Bank, to the Defendants, Sargent, Rohm and van Heemstra, under the said letter of credit pursuant to a wrongful call of this letter of credit and a misapplication of such funds by the Defendants, Sargent, Rohm and van Heemstra.

WHEREFORE, the Plaintiff prays that the Court grant the following relief in this action:

. . . .

4. That the Court enter a Declaratory Judgment that the terms of the contract between the Plaintiff and the Defendants require that the funds available under the letter of credit issued by the Defendant, Gateway Bank, in favor of the Defendants, Sargent, Rohm and van Heemstra . . . in the amount of $20,000 . . . be used only to pay for the agreed improvements at the Smyrna, Georgia property.

5. That the Court enter a Permanent Injunction enjoining the Defendant, Gateway Bank, from disbursing or making any payments on the letter of credit dated November 13, 1978, and issued by it in favor of the Defendants, Sargent, Rohm and van Heemstra . . . unless such payments conform to the agreement between the Plaintiff and Defendants, Sargent, Rohm and van Heemstra, that the funds be used to pay for improvements at the Smyrna, Georgia property exclusively.

. . . .

It is of compelling significance that nowhere in the body of the complaint has plaintiff alleged that the letter calls for a specific or identifiable document; and that in its prayer for relief, plaintiff has made no demand for any such documents to be presented or produced. The entire and sole thrust and theory of its complaint and claim for relief is an attempt to require defendants S, R, and V to apply the proceeds of the letter *according to the underlying contract* between plaintiff and S, R, and V.

More precisely, we hold that the letter itself does not require documentation. As the purchaser of the letter, it was the responsibility of plaintiff to instruct defendant Gateway Bank to include in the letter such requirements for documentation as might be

reasonably implemented by the Bank as a condition of honor and payment. The letter in dispute, in its entirety, is as follows:

Gateway Bank
Post Office Box 20300
Greensboro, North Carolina 27420
Telephone: 919/855-7100

IRREVOCABLE COMMERCIAL LETTER OF CREDIT

DATE OF ISSUE: November 13, 1978

| ADVISING BANK | APPLICANT |
|---|---|
| To be designated by beneficiary | Sunset Investment, Ltd. 1401 Sunset Drive Greensboro, N.C. 27408 |
| BENEFICIARY | MAXIMUM AMOUNT: $20,000.00 |
| Sargent, Rhom [sic] and van Heemstra, Trustees for Alwin Weber | EXPIRATION DATE: December 5, 1978 |

We hereby issue this documentary letter of credit in your (the beneficiary's) favor which is available against your drafts at: sight

Drawn on: Us

Bearing the clause: "Drawn under Gateway Bank L/C" (As indicated above)

SPECIAL CONDITIONS

This letter of credit refers to conditions relative to Smyrna Post Office, Smyrna, Georgia

s/ Robert K. Boroughs

Robert K. Boroughs

Vice President

Except so far as otherwise expressly stated, this documentary credit is subject to the "Uniform Customs and Practice for Documentary Credits" (1974 Revision) International Chamber of Commerce (Publication No. 290).

Member Federal Deposit Insurance Corporation

. . . was then being leased to the United States for use as a post office.

As that term is used in commercial transactions, and particularly as it is used and understood in letters of credit, there are no "documents" identified in the Gateway Bank letter. Plaintiff failed at its peril to use language restricting honor and payment of the credit. The letter is a "clean" credit, requiring no documentation.

The purpose of summary judgment is to eliminate formal trials where only questions of law are involved by permitting penetration of an unfounded claim or defense in advance of trial and allowing summary disposition for either party when a fatal weakness in the claim or defense is exposed. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E. 2d 419 (1979); *Gregory v. Perdue, Inc.*, 47 N.C. App. 655, 267 S.E. 2d 584 (1980). Such is the case here, and the judgment of the trial court must be affirmed.

Affirmed.

Judges VAUGHN and CLARK concur.