UNIVERSAL MARINE INSURANCE, LTD., Plaintiff,

v.

BEACON INSURANCE COMPANY, et al., Defendants.

No. ST–C–83–328.

United States District Court, W.D. North Carolina, Statesville Division.

Jan. 9, 1984.

Elliott M. Kroll, Bruce Friedman, New York City, and Francis Clarkson, Charlotte, N.C., for plaintiff.

Rachel L. Steele, Thomas Kanaday, Nashville, Tenn., Robert Cordle, Charlotte, N.C. and Charles H. Warfield, Nashville, Tenn., for defendant Cherokee Ins. Co.

James E. Walker, Charlotte, N.C., Katherine Woodruff, Wilkesboro, N.C., David M. Spector and Paul W. Schroeder, Chicago, Ill., for Beacon Ins. Co.

## ORDER

POTTER, District Judge.

THIS MATTER was heard before the undersigned on January 6, 1984 in Charlotte, North Carolina. The Plaintiff was represented by Elliott Croll, Bruce Friedman, and Francis Clarkson. The Defendant, Cherokee Insurance Company ("Cherokee"), was represented by Rachel L. Steele, Tom Kanaday, Robert Cordle, and Charles Warfield. The Defendant, Beacon Insurance Company, was represented by James E. Walker, Katherine Woodruff, David M. Spector, and Paul W. Schroeder.

The hearing was held on the motion of Plaintiff for a preliminary injunction enjoining Defendant Cherokee from presenting a draft or otherwise taking any action to draw upon a letter of credit issued in favor of Cherokee by the Bank of Nova Scotia and designated as No. 77/43695/82. Also heard was Defendant Cherokee's motion to dissolve the Temporary Restraining Order entered by this Court on December 29, 1983 restraining it from drawing upon the above-described letter of credit. Cherokee's motion was joined in by Defendant Beacon Insurance Company.

In support of its motion for preliminary injunction the Plaintiff offered its sworn

Complaint and the affidavits of Francis Clarkson, Gregory Leonard, and Lionel Herring. In opposition to the motion for preliminary injunction and in support of its motion to dissolve the Temporary Restraining Order, Defendant Cherokee submitted the affidavits of Billy Akin, James R. Sweeney, Jr., and Gary Deanhardt. Briefs were submitted by the Plaintiff and by Defendant Cherokee, and the arguments of counsel for Plaintiff, Defendant Cherokee, and Defendant Beacon Insurance Company were heard. The Court, having considered the oral arguments of counsel, the pleadings, the briefs, the affidavits, and the testimony, enters the following findings of fact and conclusions of law:

## FINDINGS OF FACT

(1) The irrevocable letter of credit No. 77/43695/82 which is the subject of these motions was caused to be issued by the Plaintiff in favor of Cherokee Insurance Company by the Bank of Nova Scotia in the amended amount of $8,489,509.00, and said letter of credit by its terms expires on January 15, 1984.

(2) The Plaintiff caused the aforementioned letter of credit to be issued in favor of Defendant Cherokee in accordance with a contract between the Plaintiff and Cherokee, entitled the Quota Share Retrocession Agreement, under which Cherokee ceded to the Plaintiff UMIC its (Cherokee's) right to certain premiums in different underwriting years in exchange for UMIC's agreement to assume various percentages of losses incurred by Cherokee under its assumed insurance and reinsurance contract. The Quota Share Retrocession Agreement requires UMIC to provide Cherokee with a letter of credit, by no later than December 31 of each year, to secure UMIC's payment of its liabilities under the retrocession agreement with respect to unpaid losses and unearned premium reserves.

(3) The amount of the letter of credit each year is determined by an estimate of UMIC's potential liabilities for unpaid losses and unearned premium reserves. It is the letter of credit presently in effect which is the subject of the motion for preliminary injunction. The amount of the letter of credit presently in force (which was issued by The Bank of Nova Scotia) is for $8,489,509.00 and it expires on January 15, 1984. UMIC has not provided Cherokee with a new letter of credit to replace the one which expires on January 15, 1984. Cherokee has advised UMIC that the amount of the new letter of credit, based upon the latest estimate of UMIC's liability, will have to be in the amount of approximately $13,000,000.00.

(4) On December 21, 1983 the Plaintiff obtained a Temporary Restraining Order from the Supreme Court of the State of New York restraining the Bank of Nova Scotia, the issuing bank, and Bankers Trust Company, the drawee bank, from making or permitting to be made any payments pursuant to the letter of credit pending formal hearing on an application for a preliminary injunction. The hearing is presently scheduled for January 16, 1984, one day after the Defendant Cherokee's right of presentment expires.

(5) If the Defendant Cherokee is enjoined from presenting its draft and otherwise taking action to draw upon the letter of credit, the letter of credit will expire before the Defendant Cherokee is able to assert its rights with respect thereto, with the result that Cherokee will be called upon to pay losses under the policies of insurance and reinsurance which is retroceded to the Plaintiff without the benefit of the letter of credit which secured Plaintiff's obligation to pay said losses.

(6) The Insurance Department of the State of Tennessee and of other states where Cherokee does business have certain regulations pertaining to reinsurance contracts involving off-shore or foreign reinsurers such as UMIC. These state insurance regulations require that the loss reserves and the unearned premium reserves involving off-shore or foreign reinsurers must be backed up by irrevocable letters of credit or funds on deposit as of the end of each calendar year—in this instance December 31, 1983. If such reserves are not

backed up by irrevocable letters of credit or funds on deposit, then the Insurance Department of the State of Tennessee and all of the other states in which Cherokee is licensed would require that these loss reserves and unearned premiums be shown as liabilities on the balance sheet. This would reduce the policyholder's surplus by that amount. The letter of credit where Cherokee is beneficiary is approximately $8.4 million and if that letter of credit is not available or in effect, then the surplus of Cherokee would be reduced by the $8.4 million which represents two-thirds (⅔) of the projected surplus, as of December 31, 1983, of Cherokee Insurance Company. Such a reduction in surplus would detrimentally affect Cherokee's ratings and retention of various state licenses and thus impair seriously its ability to do business.

(7) If the Defendant Cherokee is not enjoined from presenting its draft, the Defendant Cherokee will be able to assert its rights with respect to the letter of credit. The Plaintiff, however, protected by the Temporary Restraining Order enjoining the Bank of Nova Scotia and the Bankers Trust Company from making any payments pursuant to the letter of credit, will not suffer any immediate harm from the presentment.

(8) If, eventually, Defendant Cherokee is permitted to draw upon the letter of credit, the Plaintiff's surplus will be reduced by the amount drawn, with a total potential liability of the $8.4 million. This depletion of funds will have a detrimental effect on the Plaintiff's underwriting ability substantially similar to the detrimental effect Cherokee would suffer if not permitted to draw on the letter of credit.

(9) In balancing the equities between the Plaintiff and the Defendant Cherokee, the Court finds that the inequity and irreparable harm to the Defendant Cherokee if this Court continues to enjoin them from drawing upon the letter of credit outweighs the harm to the Plaintiff if the restraining order is lifted.

## CONCLUSIONS OF LAW

(1) As a preliminary matter it is noted that immediately prior the hearing the Defendant Cherokee filed a motion to stay proceedings pending arbitration. As all of the parties to the litigation were not represented at the hearing and had not had sufficient notice in which to respond, the Court declined ruling on the motion to stay at the hearing.

The Court, however, did find that the motion to stay proceedings pending arbitration does not preclude the Court from determining whether a preliminary injunction should issue preserving the status quo pending arbitration. *See Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064 (2d Cir.1972).

(2) With respect to the motion for a preliminary injunction, the letter of credit which is the subject of this motion is a "clean" credit; on its face it requires the presentation of no documents, other than a draft, in order to be drawn upon, and if drawn upon it is payable at sight. *Sunset Investments, Ltd. v. Sargent*, 52 N.C.App. 284, 278 S.E.2d 558 (1981).

■■■ (3) It is the very nature of letters of credit, and the key to their commercial vitality, that the contract between the Issuer and the beneficiary is independent of the underlying contract between the customer and the beneficiary. Uniform Commercial Code § 5–114, comment 1; *Pringle Associated Mortgage Corp. v. Southern National Bank*, 571 F.2d 871 (5th Cir. 1978). An issuer of a letter of credit is required to honor a draft or demand for payment which complies with the terms of the credit regardless of whether the goods or documents conform to the underlying contract between the customer and the beneficiary. It is the unique function of the letter of credit in the commercial world to assure the beneficiary of payment independent of underlying contract disputes, and to eliminate the risk to the beneficiary that the customer will refuse or halt payment because of alleged deficiencies in the beneficiary's or some other party's performance of the underlying contract. *O'Grady v.*

*First Union National Bank,* 296 N.C. 212, 250 S.E.2d 587 (1978), *Courtaulds North America, Inc. v. North Carolina National Bank,* 528 F.2d 802 (4th Cir.1975).

■ (4) Because of the importance of this independent principle governing letters of credit, the right of a customer to enjoin payment under a letter of credit is severely restricted. The Plaintiff in this action is entitled to an injunction of the letter of credit only if (1) it proves there is such fraud in the transaction as vitiates the entire transaction, *Intraworld Industries, Inc. v. Girard Trust Bank,* 336 A.2d 316 (Pa.1975), *and* (2) it proves it would suffer irreparable harm for which the legal remedy of compensatory damages would be inadequate, and its harm outweighs the harm which would be suffered by the Defendant if the preliminary injunction is granted. *Cappaert Enterprises v. Citizens & Southern International Bank,* 486 F.Supp. 819 (E.D.La.1980); *Werner v. A.L. Grootemaat & Sons, Inc.,* 80 Wis.2d 513, 259 N.W.2d 310 (1977).

■ (5) In balancing the equities between the Plaintiff and the Defendant Cherokee, the Plaintiff has failed to prove that the harm to it outweighs the irreparable harm to the Defendant Cherokee if enjoined from presenting its draft and otherwise taking action to draw upon the letter of credit. Therefore, the Plaintiff is not entitled to a preliminary injunction.

■ Having concluded that the harm which would be suffered by the Plaintiff does not outweigh the harm which would be suffered by the Defendant Cherokee, it is unnecessary for the Court to determine whether fraud exists in the underlying transaction.

IT IS, THEREFORE, ORDERED that:

(1) The Plaintiff's motion for a preliminary injunction is *DENIED;* and

(2) The Temporary Restraining Order entered by the Court on December 29, 1983 restraining the Defendant Cherokee, its officers, directors, agents and any other person, firm or corporation on its behalf from presenting its drafts and otherwise taking action to draw upon the above-described letter of credit is dissolved as of 5:00 p.m., Friday, January 6, 1984.