UNIVERSAL MARINE INSURANCE COMPANY, LTD., Appellant,

v.

BEACON INSURANCE COMPANY, Neil Portermain, New Orleans Reinsurers, Inc., Robert Shirmer, B.F.G. Toomey & Associates, Inc., B.F.G. Toomey Associates, Ltd., Barry Toomey and Cherokee Insurance Company, Ltd., Appellees,

v.

Frederick B. INGRAM and Ingram Corporation, Defendants.

UNIVERSAL MARINE INSURANCE COMPANY, LTD., Appellant,

v.

BEACON INSURANCE COMPANY, Neil Portermain, New Orleans Reinsurers, Inc., Robert Shirmer, B.F.G. Toomey & Associates, Inc., B.F.G. Toomey Associates, Ltd., Barry Toomey and Cherokee Insurance Company, Ltd., Appellees,

v.

Frederick B. INGRAM and Ingram Corporation, Defendants.

UNIVERSAL MARINE INSURANCE COMPANY, LTD., Appellant,

v.

BEACON INSURANCE COMPANY, Neil Portermain, New Orleans Reinsurers, Inc., Robert Shirmer, B.F.G. Toomey & Associates, Inc., B.F.G. Toomey Associates, Ltd., Barry Toomey and Cherokee Insurance Company, Ltd., Appellees,

v.

Frederick B. INGRAM and Ingram Corporation, Defendants.

UNIVERSAL MARINE INSURANCE COMPANY, LTD., Appellant,

v.

BEACON INSURANCE COMPANY, Neil Portermain, New Orleans Reinsurers, Inc., Robert Shirmer, B.F.G. Toomey & Associates, Inc., B.F.G. Toomey Associ-

ates, Ltd., Barry Toomey and Cherokee Insurance Company, Ltd., Appellees,

v.

Frederick B. INGRAM and Ingram Corporation, Defendants.

Nos. 84–1358(L), 84–1604, 84–1605 and 84–2055.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1985.

Decided July 24, 1985.

Elliott M. Kroll, New York City (Bruce M. Friedman; Alan J. Brill; Sol Kroll; Kroll, Pomerantz & Cameron, New York City, Weinstein, Sturges, Odom, Groves, Bigger, Jonas & Campbell, P.A., Hugh B. Campbell, Jr., E. Fitzgerald Parnell, III, Charlotte, N.C., on brief), for appellant.

Thomas P. Kanaday, Jr., Nashville, Tenn. (Rachel L. Steele, Farris, Warfield & Kanaday, Nashville, Tenn., Robert B. Cordle, Robert H. Pryor; Helms, Mulliss & Johnston, Charlotte, N.C., on brief), and David M. Spector, Chicago, Ill. (Ronald A. Jacks; Paul W. Schroeder; Edward R. Gower; Michelle M. Arnopol; Susan Babb; Isham, Lincoln & Beale, Chicago, Ill., Vernon Lane Wharton, Jr.; Hunter, Wharton & Howell, Raleigh, N.C., on brief), for appellees.

Before ERVIN and CHAPMAN, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

ERVIN, Circuit Judge:

This appeal represents one small part of ongoing litigation among several parties regarding interconnected reinsurance contracts. This aspect of the litigation con-

cerns the district court's denial of a motion by the Universal Marine Insurance Company, Ltd. (hereinafter "UMIC") to impose a constructive trust on certain contested funds previously held in the registry of the United States District Court for the Western District of North Carolina, and recently disbursed to state bankruptcy courts in North Carolina and Tennessee on behalf of Cherokee Insurance Company, Inc., and Beacon Insurance Company, Ltd., respectively. UMIC appeals the denial of its motion for a constructive trust. We affirm.

## I.

The complex factual background to this case is adequately set forth in the district court's opinions [1] and need not be repeated in its entirety here. Briefly, the parties in this case are involved in interconnected reinsurance contracts. Reinsurance companies take on risks from other insurance or reinsurance companies and are entitled to the premiums for those risks. In this way reinsurers enable insurance carriers to spread their risk of potential insurance liability.

In this case, Beacon Insurance Company (hereinafter "Beacon") took on certain liabilities from other companies and issued letters of credit in behalf of those companies. Beacon then ceded these risks and premiums to Cherokee Insurance Company (hereinafter "Cherokee") through Cherokee's agent, New Orleans Reinsurers, Inc. (hereinafter "NOLA Re"). As security for the liabilities it agreed to assume, Cherokee established a letter of credit on behalf of Beacon in the First American National Bank of Nashville, Tennessee, for over 5.6 million dollars. Cherokee in turn ceded the Beacon risks and premiums and other business to UMIC, a Bermuda-based reinsurance company. As security for these liabilities, UMIC established a letter of credit on Cherokee's behalf in the Bank of Nova Scotia in New York for 8.5 million dollars. Once this series cf financial relationships among the parties was established, a

breach by any one party would affect the others. Ultimate issues of fault and liability have not yet been resolved and are not dispositive of this particular appeal. The matters presently before this court concern the relationship between the 8.5 million dollar letter of credit from UMIC to Cherokee and the 5.6 million dollar letter of credit from Cherokee to Beacon.

UMIC and Cherokee began doing business with each other in 1979 and apparently all was well until 1983. UMIC had established the 8.5 million dollar letter of credit in Cherokee's behalf in 1982, and it was due to expire on January 15, 1984. Pursuant to its contract with Cherokee, UMIC was required to establish a new letter of credit no later than December 31, 1983. Cherokee notified UMIC that, based upon NOLA Re's estimate of UMIC's liability for the year ending in December 1983, the new letter of credit should be in the amount of 13 million dollars. UMIC did not establish the new letter of credit. Instead it filed suit against Beacon and Cherokee in the United States District Court for the Western District of North Carolina, seeking to enjoin Cherokee from drawing down the 8.5 million dollar letter of credit. UMIC also sought a temporary restraining order in New York state court to enjoin the Bank of Nova Scotia from allowing Cherokee to draw down the letter of credit.

Cherokee intervened in the New York action. The state court denied UMIC a preliminary injunction, and that action was ultimately dismissed with prejudice. Similarly, the North Carolina federal district court refused to enjoin Cherokee from drawing down the letter of credit. Cherokee drew down the 8.5 million dollar letter of credit in February of 1984.

Meanwhile, Beacon filed cross claims against Cherokee and other parties in the pending action brought by UMIC in federal court. In part, Beacon sought a temporary restraining order to prohibit Cherokee from filing a lawsuit or taking any other action in any forum other than the North Carolina

1. *Universal Marine Ins. Co., Ltd. v. Beacon Ins. Co.,* 581 F.Supp. 1131, 1133–38 (W.D.N.C.1984); *Universal Marine Ins., Ltd. v. Beacon Ins. Co.,* 577 F.Supp. 829, 831–32 (W.D.N.C.1984).

federal district court with the intent to interfere with Beacon's ability to draw down the 5.6 million dollar letter of credit. Beacon and Cherokee subsequently agreed to an order placing the proceeds of the 5.6 million dollar letter of credit in the registry of the district court pending further litigation.

On February 13, 1984, UMIC filed the motion which is the subject of this appeal. UMIC sought the imposition of a constructive trust in its behalf on the funds deposited in the registry of the district court. UMIC claimed that although the funds emanated from the First American National Bank of Tennessee, they were a portion of the proceeds of the 8.5 million dollar letter of credit which UMIC had established in Cherokee's behalf, and which Cherokee had drawn down. UMIC claimed that Cherokee was unjustly enriched by the funds and that UMIC was equitably entitled to them. UMIC sought a preliminary injunction requiring Cherokee to deposit approximately 2.9 million dollars, the difference between the 8.5 and 5.6 million dollar letters of credit, in the district court registry. It sought a constructive trust on the entire amount, or alternatively, on the 2.9 million dollars. The district court denied UMIC's motion. It found that the proceeds of the 5.6 million dollar letter of credit were not UMIC's funds and that a constructive trust in UMIC's behalf was barred by collateral estoppel due to UMIC's failure to prove fraud on Cherokee's part in the New York state court litigation.

On February 20, 1984, Beacon filed a petition for rehabilitation in North Carolina state court. John Ingram, Commissioner of Insurance of the State of North Carolina, was appointed as rehabilitator. He authorized Beacon to proceed with the lawsuit. Beacon then sought to arbitrate the claims between it and Cherokee. When Cherokee refused, Beacon filed a motion to compel arbitration. The district court granted the motion on May 4, 1984, and stayed the litigation pending the outcome of arbitration. UMIC appealed from the

order staying the litigation and sought a stay of the order pending appeal. UMIC's motion for a stay was denied by the district court and by this court. Arbitration between Beacon and Cherokee proceeded and resulted in a December 1984 settlement between those parties, which was approved by the district court. Pursuant to the settlement, the funds in the district court registry were paid out to Beacon and Cherokee. UMIC's appeal of the order staying the litigation was then voluntarily dismissed.

UMIC now appeals from the district court's order refusing to impose a constructive trust on the proceeds of the 5.6 million dollar letter of credit. Because Cherokee and Beacon are now in reorganization,[2] the funds originally in the district court's registry have been paid pursuant to the arbitration agreement to the receivers of the respective corporations. Consequently, UMIC effectively seeks to impose a constructive trust in federal court on funds subject to disbursement under North Carolina and Tennessee insolvency proceedings.

## II.

■ As an initial matter, Cherokee and Beacon argue that UMIC is barred from bringing this action by *res judicata* and collateral estoppel due to the previous judgment in the New York state litigation. We disagree.

Judgment in a prior action "operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' ... [T]he parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time." *Crowe v. Leeke,* 550 F.2d 184, 197 (4th Cir.1977) (*quoting Commissioner v. Sunnen,* 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948)).

---

2. UMIC is also in reorganization.

In order to succeed on its motion for a constructive trust, UMIC must show fraud or breach of a special legal duty on Cherokee's part. In the New York state court action to enjoin the bank, UMIC alleged that Cherokee had engaged in fraud. In denying the preliminary injunction, the court expressed doubts about UMIC's allegations, but expressly refused to reach the merits of the issue of fraud. The stipulation dismissing the suit made no reference to the grounds for dismissal. Consequently, the merits of the question of fraud on Cherokee's part have never been reached. Further, a finding on the issue of fraud was not necessary to a determination that an injunction against the bank was not warranted. Because the question of fraud was not expressly reached, and because it was not necessary to a disposition of the New York action, the dismissal of that case with prejudice will not bar UMIC's action for a constructive trust.

### III.

Cherokee and Beacon are in voluntary rehabilitation governed by the laws of their respective states. *See* Tenn.Code Ann. §§ 56–9–101 to –131; N.C.Gen.Stat. §§ 58–155.1 to –36. Under the relevant statutes, all assets of an insolvent insurance company are placed in the possession of a court-appointed receiver. Tenn.Code Ann. § 56–9–115; N.C.Gen.Stat. § 58–155.11. Claims against an insolvent insurer must be brought in the state insolvency proceedings. Tenn.Code Ann. §§ 56–9–117–56–9–118; N.C.Gen.Stat. §§ 58–155.13–58–155.-14.

The insurance industry is primarily regulated by state law. *Prudential Life Insurance Co. v. Benjamin*, 328 U.S. 408, 431, 66 S.Ct. 1142, 1155, 90 L.Ed. 1342 (1946); *Allstate Insurance Co. v. Lanier*, 361 F.2d 870, 873 (4th Cir.), *cert. denied*, 385 U.S. 930, 87 S.Ct. 290, 17 L.Ed.2d 212 (1966). Reorganization of insolvent insurance companies is a matter of state law and is handled through insolvency proceedings in state court. *Blackhawk Heating & Plumbing Co., Inc. v. Geeslin*, 530 F.2d 154, 159 (7th Cir.1976); *Motlow v. Southern Holding & Securities Corp.*, 95 F.2d 721, 725–26 (8th Cir.) *cert. denied*, 305 U.S. 609, 59 S.Ct. 68, 83 L.Ed. 388 (1938). A federal court cannot interfere with property subject to the jurisdiction of state courts in insolvency proceedings. *Pennsylvania v. Williams*, 294 U.S. 176, 183–86, 55 S.Ct. 380, 79 L.Ed. 841 (1935). This is true even when the federal action commenced prior to the state insolvency proceedings. *Id.*

In this case, UMIC asks this court to invoke its equity powers to impose a constructive trust on funds within the jurisdiction of the Tennessee and North Carolina state courts. This court is without jurisdiction to so interfere with the operation of state insolvency proceedings. UMIC's claims against Cherokee and Beacon can be properly adjudicated in the state court proceedings. This court cannot, in this case, use the extraordinary instrument of the constructive trust to grant UMIC a preference among other creditors. UMIC argues that the denial of a constructive trust will mean that it may never be fully compensated if it succeeds on the merits of its claims against Cherokee and Beacon. This is simply a hard fact of life which equally effects all creditors of an insolvent company. This court is not entitled to effectively order the state courts to allow UMIC to go to the front of the line.

Accordingly, the judgment of the district court denying the motion to impose a constructive trust is

AFFIRMED.