**STATE BANK OF SPRINGFIELD, a Minnesota banking corporation, Appellee,**

v.

**SOUTH MILL MUSHROOM SALES, INC., a Pennsylvania corporation, Appellant.**

No. 88–5101.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1988.

Decided May 8, 1989.

Rehearing and Rehearing En Banc Denied June 22, 1989.

Edward J. Pluimer, Minneapolis, Minn., for appellant.

Thomas L. Kimer, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, BEAM, Circuit Judge, and STUART,* District Judge.

BEAM, Circuit Judge.

South Mill Mushroom Sales, Inc. appeals the adverse verdict of the district court. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I. Background

In early 1985, South Mill Mushroom Sales, Inc. (South Mill) reached an agreement with Garden Fresh Produce Company (Garden Fresh) to supply fresh mushrooms to Garden Fresh. As a condition of doing business, the parties agreed that a letter of credit would be issued by State Bank of Springfield (Bank) to South Mill on behalf of Garden Fresh. The parties intended that the letter of credit would secure payment by Garden Fresh. As the volume of business between Garden Fresh and South Mill increased, the parties agreed to the issuance of new letters of credit with increased dollar values.

On April 9, 1986, South Mill made demand on the letter of credit currently in effect. It was in the amount of $150,000. Karen Babbitt, South Mill's business manager, arrived at the Bank and presented certain of the documents necessary for the demand to the president of the Bank, Kevin Jensen. Jensen informed Babbitt that the Bank would examine the documents and contact South Mill within three days. Under Minnesota law, the Bank had three days to respond to the demand. Minn.Stat. § 336.5–112 (1966). Jensen then contacted

* The HONORABLE WILLIAM C. STUART, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

Willard Pankonin, president of Garden Fresh, and informed him that South Mill had made demand on the letter of credit.

On April 11, 1986, Pankonin, Jensen and John Pia, president of South Mill, reached an agreement (hereafter referred to as the compromise agreement) under which South Mill agreed to withdraw its demand on the $150,000 letter of credit. In exchange, Garden Fresh agreed to provide to South Mill $50,000 in the form of a cashier's check from the Bank and a new letter of credit in the amount of $100,000 issued by the Bank.

Daniel Gau, general manager of Garden Fresh, delivered the letter of credit and the cashier's check to Pia on April 16, 1986. Pia objected to two of the terms of the letter of credit and discussed his concerns with Gau and Pankonin. Specifically, Pia objected to the fact that the letter provided that South Mill was required, without qualification, to continue to supply mushrooms to Garden Fresh. In addition, from the language of the letter it appeared that there was no window in time within which South Mill could make a demand for payment. Pankonin agreed to the changes requested by Pia and contacted the Chairman of the Bank, Glen Schmitz, and informed him that the changes were to be made. Schmitz also approved the changes and agreed that a revised letter of credit would be issued.

In addition to the new letter of credit and the $50,000 cashier's check, Gau gave Pia a Garden Fresh check for $25,000 and a postdated Garden Fresh check for $20,000. These checks were intended to cover the current week's shipment and the previous week's shipment. Gau informed Pia that the $20,000 check would not be good for at least a week, explaining that he needed that time to build up funds in the Garden Fresh bank account, which account would be drained by payment of the $25,000 check. Gau also told Pia that he would not be able to make any additional weekly payments for two to three weeks while Garden Fresh again built up funds in its bank account.

South Mill deposited the cashier's check and the $25,000 check on April 16, 1986. Several days later the $25,000 check was returned because of insufficient funds. As a result, South Mill insisted upon immediate payment of the $25,000 or shipments would cease. Garden Fresh arranged to have a $25,000 cashier's check sent to South Mill by the Bank to remedy the situation. After receiving a Zap Mail copy of the cashier's check on April 26, 1986, South Mill released a shipment of mushrooms. South Mill received the actual check on April 28, 1986.

On April 29, 1986, South Mill decided to cease shipping mushrooms to Garden Fresh and again made demand on the original $150,000 letter of credit. The new $100,000 letter of credit agreed upon on April 16, 1986, had not yet been forwarded by the Bank. As soon as Garden Fresh learned of the demand made by South Mill, it had the Bank stop payment on the $25,000 cashier's check. On April 30, 1986, the $20,000 check was returned because of insufficient funds.

The Bank commenced this action against South Mill contending that South Mill had breached the compromise agreement and claimed $50,000 in damages. South Mill filed a counterclaim alleging damages of $100,000 based on the Bank's breach of the compromise agreement and also made claims on the $150,000 letter of credit and the dishonored $25,000 cashier's check. Following a trial, the district court found in favor of the Bank and ordered South Mill to return the $50,000 it had received from the cashier's check and dismissed all of South Mill's counterclaims.

## II.  Discussion

### A.  Breach of the compromise agreement by South Mill

The Bank claims that South Mill breached the compromise agreement by making demand on the original $150,000 letter of credit and by refusing to ship mushrooms to Garden Fresh. We consider each of these claims separately.

### 1. Demand on the $150,000 letter of credit

■ The Bank asserts, and the district court found, that South Mill breached the compromise agreement by reasserting its demand on the $150,000 letter of credit on April 29, 1986. One of the terms of the compromise agreement was that South Mill would withdraw the demand it made on the letter of credit on April 9, 1986. By reasserting that demand, the court reasoned that South Mill breached the agreement and, as a result, was unjustly enriched in the amount of $50,000 through its retention of the cashier's check which had been issued by the Bank as part of the agreement.

For two reasons we disagree with the district court and find that the attempted demand by South Mill on the first letter of credit did not operate as a breach of the compromise agreement. First, the compromise agreement functioned as an accord and satisfaction of the $150,000 letter of credit. "An accord and satisfaction acts to discharge a contract." *Acton Constr. Co. v. State*, 363 N.W.2d 130, 133 (Minn.Ct. App.1985). By substituting the $100,000 letter of credit and the balance of the terms of the compromise agreement for the $150,000 letter of credit, the Bank's obligations under the first letter of credit were discharged. Consequently, on April 29, 1986, when South Mill made demand on the original letter of credit, the letter was null and void. It is clear to us that demand on an instrument which is null and void cannot be considered a breach of contract.

Second, the first letter of credit was no longer in effect at the time South Mill made demand, having expired by its terms on April 10, 1986. Therefore, any demand made on the letter of credit would have been ineffectual. Thus, we find that South Mill did not breach the compromise agreement by attempting to make demand on the first letter of credit.

### 2. Stopping shipments to Garden Fresh

■ The Bank also claims that South Mill breached the compromise agreement on April 29, 1986, when it refused to provide further shipments of mushrooms.

South Mill argues that it was under no duty to continue shipping produce because at that time Garden Fresh was in default of its payments. The district court made no decision on this portion of the Bank's claim, having already found that South Mill breached the compromise agreement by reasserting its demand on the original letter of credit.

In response to South Mill's argument, the Bank asserts that Garden Fresh was not in default. The Bank argues that when Gau met with Pia to deliver the $100,000 letter of credit and the $50,000 cashier's check, Gau and Pia reached an understanding regarding further payment. At that meeting Gau told Pia that it would take some time for Garden Fresh to build up sufficient funds in the Garden Fresh bank account to cover the $25,000 check and the $20,000 check. As a result, Gau told Pia that Garden Fresh would be unable to make any more payments for two to three weeks. However, on April 28, 1986, almost two weeks after this meeting, Gau again told South Mill that it would be at least three weeks before Garden Fresh could make any payments to South Mill. In effect, South Mill was told to expect payment as much as five weeks after it was due. In addition, the $25,000 Garden Fresh check, which Gau had assured Pia would be honored, had been returned for insufficient funds. Furthermore, on April 28, 1986, Gau informed South Mill that the $20,000 check, which had been post-dated to April 23, 1986, had also been returned. We find that these events were not contemplated or agreed to by South Mill at the time it entered into the compromise agreement, nor were they a part of the understanding Pia and Gau reached on April 16, 1986.

Under the revised letter of credit, South Mill had no duty to continue shipping mushrooms to Garden Fresh unless Garden Fresh was current. Due to earlier problems with payment, the parties had agreed that Garden Fresh would send South Mill a check every week covering the previous week's shipment. Under these circumstances, Garden Fresh was not current.

Consequently, we hold that Garden Fresh did in fact breach the compromise agreement by failing to remain current and as a result South Mill had the right to discontinue shipments to Garden Fresh. Thus, South Mill did not breach the compromise agreement by stopping shipments to Garden Fresh.

Since South Mill did not breach the compromise agreement by attempting to make demand on the original letter of credit or by stopping shipments to Garden Fresh, we reverse the decision of the district court on this issue and hold that South Mill was not unjustly enriched in the amount of the $50,000 cashier's check. In fact, the $50,000 check was, apparently, tendered to pay part of a past due account which was in arrears by an amount far in excess of $50,000.

### B. Breach of the compromise agreement by the Bank

■ In its counterclaim, South Mill contends that the Bank breached the compromise agreement by failing to issue the revised $100,000 letter of credit. On April 16, 1986, the Bank agreed to supply a revised letter of credit. However, a revised letter was never issued. The district court found that the Bank did not have a duty to issue the letter of credit after South Mill made demand on the original letter of credit and breached the compromise agreement. Since the demand was made only thirteen days after the Bank agreed to issue the revised letter of credit, the court found that the failure to issue the letter within that time was not unreasonable.

Having found that South Mill's demand on the first letter of credit was not a breach of the compromise agreement, we conclude that the demand did not excuse the Bank from its obligation to issue the revised $100,000 letter of credit. Consequently, we must now consider whether the Bank's failure to issue the revised letter functioned as a breach of the compromise agreement.

It has long been established "that the letter of credit is separate and distinct from the underlying contractual transaction between the issuing bank's customer and the beneficiary" of the letter of credit. *Bank of Newport v. First Nat'l Bank and Trust Co.*, 687 F.2d 1257, 1261 (8th Cir.1982). As such, it would appear, initially, that the Bank's failure to issue the revised letter of credit would not have functioned as a breach of the agreement because, pursuant to *Bank of Newport,* the Bank's obligations under the letter of credit were separate from the compromise agreement between South Mill and Garden Fresh. However, this rule is not applicable to the circumstances of this case. The Bank was an integral party to the business relationship and the compromise agreement. The obligations of the Bank under the agreement cannot be separated from those of the other parties to the agreement, South Mill and Garden Fresh. As part of the agreement, the Bank agreed to provide the letter of credit and a $50,000 cashier's check. In return, the Bank received a greater possibility that Garden Fresh would stay in business and, consequently, the chances were enhanced that Garden Fresh could repay the Bank the money it had borrowed. Therefore, we decline to apply the rule in *Bank of Newport* and find, instead, that the Bank's failure to issue the letter of credit, as it agreed to do pursuant to the compromise agreement, was a breach of the compromise agreement by a party to the contract.

As damages for the breach by the Bank, South Mill claims $100,000 under the theory that the revised letter of credit gave it an absolute right to be paid up to $100,000 in the event Garden Fresh was in default on the agreed-upon payment terms. We cannot reach a conclusion on this issue because the district court made no findings on the issue of a default by Garden Fresh and consequently the issue of damages from such a default was not adequately addressed. Although we have found that Garden Fresh was in default, we must remand this case to the district court for a determination of damages due South Mill as a result of the Bank's breach of the compromise agreement and Garden Fresh's default by being in arrears for a period in excess of thirty days.

### C. Stopping payment on the $25,000 cashier's check

██ On April 29, 1986, upon learning that South Mill was making demand on the original letter of credit and refusing to make any further shipments of mushrooms, Garden Fresh contacted the Bank to determine if payment could be stopped on the $25,000 cashier's check. Pankonin spoke with Jensen, who entered a stop payment order on the cashier's check.

The district court found that, under Minnesota law, the Bank was entitled to stop payment on the cashier's check if South Mill was not a holder in due course. *Seman v. First State Bank*, 394 N.W.2d 557, 560 (Minn.Ct.App.1986). The court concluded that South Mill was not a holder in due course and that therefore the Bank could assert any defenses it had against South Mill. As a defense, the Bank asserts failure of consideration because the Bank issued the cashier's check with the agreement that shipments to Garden Fresh would continue. When South Mill refused to make further shipments, it failed to provide the agreed-upon consideration for the cashier's check. The district court agreed and held that this provided a defense to South Mill's claim for wrongful dishonor of the cashier's check and, therefore, dismissed South Mill's claim.

South Mill argues that the Bank did not bargain for the continued shipments and contends that failure of consideration is a defense which only Garden Fresh can assert. In the alternative, South Mill claims that the consideration for the cashier's check was the release of the shipment of mushrooms on April 26, 1986. Thus, South Mill asserts, neither the Bank nor Garden Fresh can claim a failure of consideration.

The district court found that the defense of failure of consideration was the Bank's defense and not a Garden Fresh defense which the Bank was asserting. We agree with the district court that the Bank bargained for continued shipments to Garden Fresh and that this defense was the Bank's to assert. *See State Bank v. American Nat'l Bank*, 266 N.W.2d 496 (Minn.1978) (holding that a bank can assert the defense of failure of consideration if the defense is the bank's rather than the customer's and if the person against whom the bank is asserting the defense is not a holder in due course). Because we agree that South Mill was not a holder in due course and that South Mill did not provide the bargained-for consideration, the Bank was within its rights to stop payment on the cashier's check. Furthermore, we find that the cashier's check was not issued solely to ensure release of the April 26 shipment, but to ensure further shipments as well. Therefore, we affirm the findings of the district court on this issue.

### III. Conclusion

In conclusion, we find that South Mill did not breach the compromise agreement by attempting to make demand on the $150,000 letter of credit and, consequently, is not liable to the Bank in the amount of the $50,000 cashier's check. Furthermore, we find that Garden Fresh was in default of the compromise agreement and that South Mill is entitled to damages from the Bank for its failure to issue the revised letter of credit. We remand for further proceedings to determine the amount which South Mill is entitled to recover under the agreed-upon terms of the revised letter of credit. Finally, we find that the Bank had the right to stop payment on the $25,000 cashier's check because of the failure of South Mill to provide the agreed-upon consideration.

Thus, the judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.