LOKEN, Circuit Judge.
 

 Defendant Thai Military Bank (TMB) appeals a district court
 
 [1]
 
 judgment in favor of plaintiff B.E.I. International, Inc., declaring that TMB’s rights as beneficiary to an irrevocable standby letter of credit have expired. TMB argues that the issuing bank, defendant Worthen National Bank of Arkansas, wrongfully repudiated the letter of credit, thus giving TMB an action for wrongful dishonor. We affirm.
 

 I.
 

 In September 1986, U.S.-based BEI agreed to produce and sell “hydra” rocket systems to the Royal Thai Army (RTA). To assure payment by RTA, TMB in Bangkok issued an irrevocable letter of credit in favor of BEI in the amount of the unpaid balance of the purchase price. TMB also issued a “counterguarantee” in favor of RTA in the amount of $237,008.40 (10% of the total contract price). This counterguar-antee obligates TMB to satisfy any claims RTA may have against BEI in the event of BEI’s failure to perform under the contract. To protect TMB, Worthen issued the letter of credit which is the focus of this litigation. Worthen promised to pay TMB up to $237,007 upon presentment of a sight draft or tested telex accompanied by TMB’s statement certifying that the amount drawn has been claimed by RTA under TMB’s counterguarantee.
 

 
 *441
 
 Worthen’s letter of credit stated that it would expire on November 23, 1988. However, it further provided:
 

 Worthen ... hereby authorize^] you [TMB] to extend your counterguarantee in favour of Royal Thai Army ... for further period as requested by them, upon receipt of such notification from you this standby letter of credit will be automatically extended in the same man-' ner.
 

 On August 16, 1988, TMB invoked this automatic extension clause when it became clear that the rockets would not be delivered until after the letter of credit’s expiration date because of delays BEI encountered in obtaining a U.S. export license. TMB notified Worthen that the letter should be extended until April 23, 1989. Worthen confirmed the extension, but also attempted to delete the automatic extension clause from its letter of credit. TMB rejected this improper unilateral modification.
 

 On March 23, 1989, TMB made a timely demand for payment, or draw, on the full amount of Worthen’s letter of credit, certifying that RTA had demanded an even larger amount under TMB’s counterguar-antee. Under Arkansas law, Worthen had three banking days to examine the documents presented and determine whether to honor the draw.
 
 See
 
 Ark.Code Ann. § 4-5-112(l)(a). BEI, through its agent in Thailand, immediately protested RTA’s invocation of the contractual penalty provision for late delivery. BEI urged RTA to direct TMB to withhold its draw under the letter of credit until this contractual dispute between BEI and RTA was resolved.
 

 On March 31, TMB sent Worthen a telex stating, “please hold our [March 23] telex ... pending ... further instructions.” Worthen responded:
 

 Without dishonoring the draw received from you by telex on March 28,1989,
 
 [2]
 
 we are deferring honor pursuant to the instructions received from you by telex on March 31, 1989, whereby you requested us to hold your draw pending your further instructions.
 

 Nothing further happened until after April 23, the letter of credit’s extended expiration date. On April 26, BEI notified Worthen that the credit had “lapsed by its terms,” that any payment by Worthen would be “unauthorized and invalid,” and that BEI expected immediate release of the collateral it had deposited with Worthen. On May 3, Worthen advised TMB that the letter of credit had expired on April 23 and that Worthen “believed” that the March 23 draw request had also expired. At the same time, Worthen advised BEI that BEI’s collateral would not be released until TMB released Worthen from liability under the letter of credit.
 

 In November 1989, with matters still unresolved on all fronts, BEI filed this diversity action against Worthen and TMB, seeking a declaration that the letter of credit had expired and demanding immediate release of the collateral held by Worth-en. In January 1990, TMB asked Worthen how to proceed, and Worthen replied by urging TMB to acknowledge that its rights under the letter of credit had expired. Instead, on February 28, 1990, TMB responded:
 

 Further to our telex dated Mar. 31, 1989 please continue to hold your above L/C as our guarantee issued without expiry date according to government regulations based on your representations that your above L/C could be extended until all aspects of BEI contract finalized. In previous correspondence you were instructed to hold our request to pay out under your L/C until further instruction. Up to now there is still a question of liquidated damages which remains unresolved. Therefore, you are hereby requested to extend your said L/C until Sep 30, 1990 for time to resolve dispute between parties to contract.
 

 Worthen did not respond to this request, and nothing more was heard from TMB until after September 30, 1990. BEI’s case
 
 *442
 
 was tried before the district court in April 1991.
 

 The district court rejected BEI’s claim that TMB had made a fraudulent demand for payment but still granted BEI the relief it sought. First, the court held that TMB’s February 28, 1990, request to extend the letter of credit to September 30, 1990, had the effect of cancelling TMB’s draw of March 23, 1989. Then the court held that, since TMB failed to make another draw or request a further extension of the credit before September 30, 1990, the letter of credit expired on that date. On appeal, TMB argues that Worthen’s May 1989 and January 1990 communications to TMB were an anticipatory repudiation of the letter of credit, giving TMB an action for wrongful dishonor of its March 1989 draw. We disagree.
 

 II.
 

 Much of the record in this lawsuit is focused on the merits of BEI’s underlying contractual dispute with RTA. BEI complains that RTA controls TMB and has unfairly pursued penalty payments for excusable late deliveries. TMB argues that it must be allowed letter of credit protection coextensive with the “counterguarantee” it gave RTA because that was the intent of the BEI/RTA contract. These contentions ignore the most fundamental principle of modern letter of credit law: “the letter of credit is separate and distinct from the underlying contractual transaction between the issuing bank’s customer and the beneficiary.”
 
 Bank of Newport v. First Nat’l Bank & Trust Co.,
 
 687 F.2d 1257, 1261 (8th Cir.1982). Thus, this appeal is governed by the terms and conditions of Worthen’s irrevocable standby letter of credit.
 

 An essential element of a letter of credit is an expiration date:
 

 The expiration date fixes with certainty the liability of the issuing bank. Before the expiration date, the bank has an absolute, unconditional obligation to pay provided that the beneficiary complies with the terms and conditions of the letter of credit. After that date, however, the bank has no obligation to pay.
 

 Consolidated Aluminum Corp. v. Bank of Virginia,
 
 544 F.Supp. 386, 397 (D.Md. 1982),
 
 aff'd,
 
 704 F.2d 136 (4th Cir.1983).
 
 See State Bank of Springfield v. South Mill Mushroom Sales, Inc.,
 
 875 F.2d 158, 161 (8th Cir.1989).
 

 Courts and commentators have long recognized that strict regard for the expiration dates in letters of credit is critical to their continuing commercial viability.
 
 See
 
 John F. Dolan,
 
 The Law of Letters of Credit: Commercial and Standby Credits
 
 ¶ 5.03[3][e], at 5-37-5-38 (2d ed. 1991). Although letters of credit lacking an expiration date are not unheard of, the Comptroller of the Currency’s regulations provide that a letter of credit should contain a specified expiration date “as a matter of sound banking practice,” 12 C.F.R. § 7.7016(b).
 
 [3]
 
 Also, Article 46(a) of the Uniform Customs and Practices for Documentary Credits,
 
 [4]
 
 which the parties expressly incorporated into Worthen’s letter of credit, requires that “[a]ll credits must stipulate an expiry date for presentation of documents for payment, acceptance and negotiation.”
 

 When the bank’s customer and the letter of credit beneficiary want a letter of credit for an indefinite period of time, many banks will issue a credit containing an “evergreen clause.” Such a clause typically provides that the credit is issued for one year but will be extended automatically from year to year unless
 
 the bank gives notice
 
 that it elects not to renew.
 
 See, e.g., National Sur. Corp. v. Midland Bank,
 
 551 F.2d 21, 23 (3d Cir.1977). The parties
 
 *443
 
 here refer to the extension provision m Worthen’s letter of credit as an evergreen clause, but that loose terminology tends to mask an important distinction — Worthen’s credit expired on a specific date unless “automatically extended”
 
 by notice from TMB to Worthen.
 

 We conclude that the district court overlooked the precise language of this expiration clause in holding that TMB’s February 1990 telex extended Worthen’s letter of credit to September 1990. The credit bore an original expiration date of November 23, 1988. Prior to expiration, TMB by written notice invoked the extension clause and extended the credit to April 23, 1989. When TMB failed to give notice of a further extension prior to April 23, 1989, the letter of credit expired. After expiration, TMB had no unilateral right to revive Worthen’s time-specific letter of credit commitment. Even if the parties to the underlying contract intended that Worth-en’s letter of credit should remain open for the life of TMB’s counterguarantee to RTA, the plain language of the letter of credit document is controlling.
 
 See Universal Sec. Ins. Co. v. Ring,
 
 298 Ark. 582, 769 S.W.2d 750, 752 (1989).
 

 Because the letter of credit expired on April 23, 1989, the contentions TMB raises on appeal are without merit. TMB claims that Worthen repudiated the letter of credit in communications that came after April 23,1989. Obviously, there can be no anticipatory repudiation of a contract that has already expired. And if there was no anticipatory repudiation by Worthen, TMB’s wrongful dishonor theory collapses.
 
 [5]
 

 Accordingly, the judgment of the district court is affirmed.
 

 [1]
 

 . The HONORABLE STEPHEN M. REASONER, Chief Judge of the United States District Court for the Eastern District of Arkansas.
 

 [2]
 

 . Although TMB’s tested telex was dated March 23, Worthen took the position that it was not received until March 28, the date Worthen confirmed the test of the telex.
 

 [3]
 

 . Another banking regulation, 12 C.F.R. § 208.-8(d)(2), which requires banks to aggregate standby letters of credit in applying statutory lending limits, would also "be problematic if courts permitted beneficiaries to draw on a credit after it expired. Banks would not know when to delete a standby from a customer's list of loans.” Dolan,
 
 The Law of Letters of Credit
 
 ¶ 5.03[3][e], at 5-38.
 

 [4]
 

 . International Chamber of Commerce Pub. No. 400 (effective October 1, 1984). The UCP is an internationally accepted codification of banking practice and custom regarding letters of credit.
 

 [5]
 

 . In the district court, TMB argued that its March 23, 1989, draw still remains on "hold,” where Worthen placed it on March 31, 1989, pending "further instructions" from TMB. The district court held that this draw was snuffed out by TMB’s inconsistent instructions in February 1990 to extend the credit to September 30, 1990. Although we now hold that the credit expired in April 1989, that does not resolve the status of the March 23 draw, because an issuing bank’s decision whether or not to honor a timely draw may extend beyond the expiry date.
 
 See, e.g., Morgan Guar. Trust Co. v. Vend Technologies, Inc.,
 
 100 A.D.2d 782, 474 N.Y.S.2d 67 (1984). However, whether the district court correctly interred the March 23 draw is a question that TMB has chosen not to raise on appeal and therefore we do not address it.