# 2004 DTA 81

**TRIBUNAL DE CIRCUITO DE APELACIONES
REGION JUDICIAL DE SAN JUAN, PANEL IV**

ASOCIACION DE RESIDENTES DE EL CEREZAL Y REPARTO DE DIEGO, INC.
Apelados

v.

ANTONIO LUIS RIVERA RIVERA, OLGA IVETTE BORIA DIAZ, AMBOS POR SI
Y EN REPRESENTACION DE LA SOCIEDAD LEGAL DE GANANCIALES
CONSTITUIDA ENTRE ELLOS
Apelantes

Núm. KLAN-03-00166

San Juan, Puerto Rico, a 23 de marzo de 2004

Panel integrado por su Presidente, el Juez Gierbolini,
y los Jueces Cordero y Rodríguez Muñiz

Cordero, Juez Ponente

Oportunamente, Antonio L. Rivera y Olga I. Boria Díaz (*"los apelantes"*) presentaron un escrito de Apelación ante este Tribunal en el cual nos solicitaron revisar la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (*"TPI"*) el 27 de noviembre de 2002, notificada el 15 de enero de 2003. Mediante la referida Sentencia, el TPI declaró Con Lugar la demanda de cobro de dinero (Regla 60) presentada por la Asociación de Residentes El Cerezal y Reparto de Diego, Inc. (*"Asociación"*).

**I**

La Asociación presentó ante el TPI, el 3 de diciembre de 2001, una Demanda en Cobro de Dinero (Regla 60) en la que indicó que los apelantes adeudan a ésta la suma de $2,567.32 por razón de cuotas por concepto de control de acceso a la urbanización, más $813.40 en concepto de honorarios de abogado y $50.00 en costas y gastos. Las cuotas establecidas ascienden a la suma de $30.00 mensuales. Con dicha demanda se acompañó Declaración Jurada a tales efectos. Posteriormente, el TPI señaló juicio en su fondo y convirtió el caso en uno ordinario de cobro de dinero. Los apelantes presentaron Contestación a Demanda el 14 de marzo de 2002, negando los hechos aducidos en la demanda.

La Asociación presentó el 16 de octubre de 2002 *"Moción Solicitando que se Dicte Sentencia Sumaria"* en la cual adjuntó documentos evidentes de que: (1) el 17 de agosto de 1995, el Municipio de San Juan aprobó la Resolución Número 11, autorizando el control de acceso en la Urbanización El Cerezal y Reparto de Diego, (2) el 1ro. de marzo de 1996, el Municipio de San Juan aprobó Mediante la Resolución Número 74; enmiendas a la Resolución Número 11; (3) el 19 de marzo de 1996, la señora Boria, esposa de Rivera, suscribió el documento titulado *"Certificado de Aceptación/Adopción"*, ante el Notario Juan R. Lugo Lebrón, mediante el cual acusa recibo del Dictamen Preliminar emitido por el Municipio de San Juan el 1ro de marzo de 1996, con relación al control de acceso de la urbanización y en el cual afirmó no tener objeción a que se implantara el mismo; (4) los apelantes son dueños de una propiedad en la Urbanización El Cerezal; (5) el 17 de julio de 1996, el Municipio de San Juan emitió certificación aprobando el control de acceso de la urbanización, de la cual surge *"que se han cumplido todos los requisitos de Ley y que aprobó el dictamen preliminar con un 76% del total de propietarios dentro del área a controlarse"*, y (6) el Reglamento que faculta a la Asociación para fijar cuotas a pagarse por los residentes. Así, la Asociación solicitó, a tenor con lo que dispone la Ley de Control de Acceso Vehicular y al no haber controversia sobre los hechos que se dictara sentencia sumaria a su favor por la suma de $2,657.32 en deuda hasta noviembre de 2001, más las cuotas devengadas desde entonces, a razón de $30.00 por mes, los gastos, costas, intereses y honorarios de abogado.

Los apelantes presentaron su *"Oposición a Moción de Sentencia Sumaria"* el 28 de octubre de 2002, en la que indicaron que no surge que ellos hubieran contraído obligación ni deuda alguna con la Asociación. Los apelantes argumentaron que el *"Certificado de Aceptación/Adopción"* no establece obligación alguna de parte de ellos ni tampoco constituye un contrato. Los apelantes no acompañaron documento alguno que controvirtiera los presentados por la Asociación.

Ante ello, el TPI emitió Sentencia el 27 de noviembre de 2002, notificada el 15 de enero de 2003, en la cual no existiendo controversia de hechos y a tenor con la Ley de Control de Acceso Vehicular, procedió a declarar con lugar la demanda presentada.

Inconforme, los apelantes comparecen ante este Tribunal alegando que erró el TPI al analizar el documento titulado *"Certificado de Aceptación/Adopción"* y considerar que el mismo constituye un contrato que conlleva la

obligación de pagar cuotas de mantenimiento y por tanto declarar con lugar la Sentencia Sumaria ante la existencia de hechos en controversia.

## II

La Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece lo que es una Sentencia Sumaria:

*"La moción se notificará a la parte contraria con no menos de diez (10) días de anticipación a la fecha señalada para la vista. Con anterioridad al día de la vista, la parte contraria podrá notificar contradeclaraciones juradas. La sentencia solicitada se dictará inmediatamente si las alegaciones, [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Podrá dictarse sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito."*

La sentencia sumaria es un mecanismo procesal discrecional y extraordinario. Su propósito es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo. *Luán Investment, Corp. v. Rexach Construction Co., Inc.*, __D.P.R.__ (2000), **2000 J.T.S. 196**, a la pág. 553; *Management Administration Services, Corp. v. Estado Libre Asociado de Puerto Rico*, __D.P.R.__ (2000), **2000 J.T.S. 189**, a la pág. 440; *Hurtado v. Osuna*, 138 D.P.R. 801, 809 (1995); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624, 632 (1994). Unicamente se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho; mediante dicho mecanismo se obtiene un remedio rápido y eficaz en casos en que queda demostrado que no existe una controversia sobre hechos materiales del litigio. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881, 911-912 (1994); *Revlon v. Las Américas Trust Co.*, 135 D.P.R. 363, 376 (1994).

De modo, que la Sentencia Sumaria aligera la tramitación del caso, permitiendo que se dicte sentencia sin celebrar una vista en los méritos, cuando de los documentos surge que no existen controversias de hechos, sino que lo que resta es aplicar el derecho. *PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra*, a la pág. 912; *Caquías v. Asoc. Res. Mansiones de Río Piedras*, 134 D.P.R. 181, 216 (1993); *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538, 548 (1991); *Cuadrado Lugo v. Santiago Rodríguez,* 126 D.P.R. 272, 279 (1990). No obstante, el propósito de solución rápida está supeditado al principio de alcanzar una decisión justa. *Cuadrado Lugo v. Santiago Rodríguez, supra*, a la pág. 279.

Procede dictar Sentencia Sumaria cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la parte promovida no tiene derecho alguno bajo cualquier circunstancia discernible de las alegaciones que no hayan sido refutadas. *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714, 720 (1986). La parte promovida no puede cruzarse de brazos y descansar en sus alegaciones, sino que tiene que refutar los hechos alegados mediante presentación de prueba, y deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. *Ramos de Szendrey v. Colón Figueroa, supra*, a la pág. 967; *PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra*, a la pág. 913; *Corp. Presiding Bishop CJC of LDS v. Purcell, supra*, a la pág. 721.

En caso de duda sobre la existencia de controversia sobre hechos, se debe resolver en contra de quien presentó la Sentencia Sumaria. La Sentencia Sumaria no permite que el tribunal dirima cuestiones de credibilidad. *Col. Ing. Agrim. P.R. v. A.A.A.,* 131 D.P.R. 735, 781-782 (1992).

A diferencia de otras –tales como la moción de desestimación-, la moción de sentencia sumaria no se considera a base de las alegaciones solamente, como regla general, sino a base de las declaraciones juradas y otros

documentos admisibles como evidencia. Procede, aunque se hayan alegado hechos que aparentan estar en controversia, pero el promovente logra demostrar, preponderadamente y mediante dicha prueba documental, que en el fondo no existe controversia sobre los hechos medulares. En tales casos, la parte promovida tiene que defenderse de la misma forma; es decir, apoyándose, a su vez, de documentos u otra evidencia admisible. En otras palabras, la parte contraria no puede descansar solamente en las aseveraciones contenidas en sus propias alegaciones, sino que viene obligada a contestar la solicitud del promovente de forma detallada y específica y con prueba. De no hacerlo así, se dictará sentencia en su contra si procediere. *Jusino Figueroa v. Walgreens of San Patricio, Inc.,* __D.P.R.__ (2001), **2001 J.T.S. 154**, a la pág. 373.

En fin, la Sentencia Sumaria se usa cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la parte promovida no tiene derecho alguno bajo cualquier circunstancia discernible de las alegaciones que no haya sido refutadas. *Asociación de Pescadores de Punta Figueras, Inc. v. Marina de Puerto del Rey, Inc.,* __D.P.R.__ ( 2001), **2002 J.T.S. 4**, a la pág. 583.

### III

Con el propósito de promover una mayor participación de la ciudadanía en la lucha contra el crimen, y procurar una mejor convivencia en las comunidades del país, el 20 de mayo de 1987, la Legislatura aprobó la Ley Núm. 21 sobre control de tráfico y uso público [de las calles] en áreas residenciales, es decir, la Ley de Control de Acceso Vehicular, 23 L.P.R.A. § 64, *et seq.* A través de esta ley, se estableció un procedimiento mediante el cual las personas que residan en urbanizaciones o calles cuyas vías públicas no sean utilizadas como acceso de entrada o salida a otras comunidades, pueden solicitar y obtener autorización [del municipio correspondiente] para establecer un sistema de control de acceso a las calles que se encuentren dentro de su área residencial.

La Ley dispone, en lo pertinente, que:

*"Una autorización para solicitar el permiso para controlar el acceso o accesos a la urbanización, calle o comunidad prestada voluntariamente por un propietario mayor de edad y representación de una vivienda obligará al propietario a cumplir con lo dispuesto en la sec. 64d-3 de este título y estará en pleno efecto y vigor mientras no se emita un documento escrito que claramente revoque la autorización prestada con fecha anterior. Una revocación de autorización para solicitar el permiso para controlar el acceso o accesos a la urbanización, calle o comunidad, será válida únicamente si se presenta en cualquier momento hasta la fecha de celebración de la primera vista pública. Luego de esta fecha aplicará lo dispuesto en la sec. 64d-3 de este título. Aquellas personas que favorezcan la implantación del sistema, deberán hacerlo expresamente y por escrito en el momento en que se lleve a cabo la gestión para obtener de los propietarios las autorizaciones necesarias para necesitar el permiso de control de acceso."* (Énfasis suplido.) 23 L.P.R.A. § 64a(c).

La mencionada sección no requiere forma particular alguna para la autorización; sólo que se haga *"expresamente y por escrito en el momento en que se lleve la cabo la gestión para obtener de los propietarios las autorizaciones necesarias para solicitar el permiso de control de acceso".* Ibid.

Para viabilizar el establecimiento de dicho sistema y mantenerlo funcionando, la Ley expresamente faculta al Consejo, Junta o Asociación de Residentes para imponer a los propietarios cuotas mensuales, para sufragar la operación del acceso controlado, incluyendo los salarios del personal contratado. 23 L.P.R.A. § 64d-3(a). A su vez, expresamente señala quiénes están obligados al pago de las referidas cuotas:

*"(1) Los propietarios de fincas en las que se haya inscrito la autorización o permiso bajo el procedimiento establecido en la sec. 64d-1 de este título.*

*(2) Los propietarios que autorizaron la solicitud para establecer el control de acceso, según fue implantado.*

*(3) Todo propietario adquiriente de una finca, ubicada en una urbanización, calle o comunidad que ha sido autorizada por el municipio correspondiente para controlar el acceso o que, a la fecha de la compraventa, se encontrara en trámite de obtener el consentimiento de tres cuartas (¾) partes de los propietarios y así conste en actas.*

*(4) Cuando la solicitud fue hecha por el urbanizador, desarrollador o constructor, el pago de cuota será obligatorio para toda persona que advenga dueño del inmueble.*

*(5) Los propietarios que no autorizaron expresamente el establecimiento del sistema de control de acceso, pero que en fecha posterior se comprometieron al pago mediante contrato escrito.*" (Enfasis suplido.) 23 L.P.R. A. §64d-3(a).

A tenor con ello, resulta claro que una vez la parte autoriza para que se lleve a cabo la mera solicitud de control de acceso, ésta está obligada al pago de las cuotas que se impongan para sostener el mismo, a menos que claramente haya revocado por documento escrito tal autorización para control de acceso en fecha anterior a la implantación del mismo, o si el sistema implantado no fuese igual al sistema por ellos autorizado inicialmente. *Caquías v. Asoc. Res. Mansiones Río Piedras, supra,* a las págs. 210-211, 212-213. █

## IV

En el caso de autos, surge que el Municipio de San Juan celebró una vista pública el 4 de noviembre de 1993 sobre el control de acceso solicitado por la Asociación y luego emitió un Dictamen Preliminar para el cierre de la Urbanización mediante la Resolución Número 11 aprobada el 17 de agosto de 1995. Dicha Resolución debía ser adoptada mediante declaración firmada por no menos de tres cuartas (¾) partes de los propietarios dentro de los quince (15) días siguientes a la fecha del archivo en el Municipio de copia de la notificación para que el mismo fuera firme. No obstante, la Asociación solicitó enmendar una de las secciones de la Resolución Número 11 por lo que solicitó una enmienda a ésta, la cual fue aprobada mediante la Resolución Número 74 de 1ro de marzo de 1996. Así, la Asociación notificó el siguiente documento a los propietarios de la Urbanización y la señora Boria suscribió bajo juramento el mismo:

*"Municipio de San Juan*
*Ciudad Capital*

| | |
|---|---|
| *Asociación Residente* | *Res. Número 11, Serie 1995* |
| *El Cerezal & Reparto 96,* | *Según enmendada por la* |
| *de Diego, Inc.* | *Res. Núm. 74 Serie 1995-96* |

*SOBRE: CONTROL DE ACCESO LEY NUM. 21 DE 20 DE MAYO DE 1987, SEGUN ENMENDADA*

*"CERTIFICADO DE ACEPTACION/ADOPCION"*

*Yo, Olga I. Boria Díaz, bajo juramento prestado en forma legal, certifico y hago constar:*

*PRIMERO: Que soy dueño de la residencia número 1663 en la Calle Indo de la Urbanización El Cerezal, Río Piedras, PR.*

*SEGUNDO: Que he recibido copia del DICTAMEN PRELIMINAR emitido por el Municipio de San Juan, con fecha 1ro de marzo de 1996, respecto al control de acceso de la Urbanización donde ubica mi residencia o propiedad.*

*TERCERO: Que no tengo objeción a que se implante el control de acceso, según se establece en dicho*

*dictamen, accediendo a que se dicte RESOLUCIÓN FINAL a este respecto."* (Enfasis suplido.)

Posteriormente, el 17 de julio de 1996, el Municipio emitió la certificación sobre control de acceso según fue solicitada y aprobada por un 76% del total de los propietarios. Véase Apéndice, a las págs. 74-75.

No cabe duda alguna que dicho *"Certificado de Aceptación/Adopción"* constituye una autorización para que se implantara el acceso, por lo que conforme la Ley de Control de Acceso Vehicular, *"los propietarios que autorizaron la solicitud para establecer el control de acceso...",* están obligados a pagar las cuotas de mantenimiento. 24 L.P.R.A. § 64d-3. Es evidente que la ley contempla que de esta forma se constituye un contrato vinculante entre el residente y la Asociación. Es igualmente evidente la intención legislativa de evitar que el esquema estatuido pueda derrotarse mediante la merma en fondos que pueda resultar del arrepentimiento posterior de los residentes.

Ciertamente, en el caso ante nos, no existe controversia sobre los hechos esenciales, por lo que procedía dictar sentencia sumaria aplicando el derecho según esbozado. A la luz de éste, los apelantes se obligaron al autorizar el control de acceso y por ello son responsables de los pagos del mismo. A su vez, éstos no controvirtieron la deuda reclamada.

**V**

Por los fundamentos antes esbozados, se confirma la Sentencia emitida por el TPI.

Lo acuerda y manda este Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau<br>
Secretaria General

**ESCOLIO 2004 DTA 81**

**1.** Recuérdese que en este caso la ley no disponía, como hoy día, en cuanto a que la autorización obligaba a sufragar los gastos de operación y mantenimiento del sistema. *Id.*, a la pág. 214.