Coll Martí, Jueza Ponente
*1062 TEXTO COMPLETO DE LA SENTENCIA
Comparece el Ledo. Ubaldo Lugo Cruz y el Fondo de Fianza Notarial del Colegio de Abogados de Puerto Rico, en adelante los apelantes, mediante recurso de apelación en el que solicitan revisión de una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan. En dicha Sentencia se declaró Ha Lugar una demanda contra terceros presentada por la Sra. Aida Meléndez Nieves, la Sucesión del Sr. Héctor Mario Santana Rivera compuesta por Marisol, Héctor Mario, Marilú, todos de apellidos Santana Meléndez, y su viuda, la Sra. Aida Meléndez Nieves y la Sucesión de Mario Santana Martínez compuesta por el Sr. Héctor Mario Santana Rivera, en adelante los apelados.
En dicha Sentencia se ordenó a los apelantes pagar $1,000.00 de indemnización por sufrimientos y angustias mentales a los hermanos Santana Meléndez, más $4,000.00 en concepto de honorarios de abogados y $3,000.00 a los esposos Montalvo López, también en concepto de honorarios de abogados. Además, se le ordenó a los apelantes realizar todas las gestiones de naturaleza legal y notarial conducentes a inscribir á favor de los apelantes, libre de cargas y gravámenes, la propiedad objeto de este litigio.
*1063 Por los fundamentos que se discuten a continuación, SE CONFIRMA la Sentencia apelada.
I
El Banco Popular de Puerto Rico, en adelante el Banco, presentó demanda en cobro de dinero y ejecución de hipoteca por la vía ordinaria en la que incluyó como demandados al Sr. Pedro Juan Montano Rosario, su esposa, la Sra. Juanita López Rosario, la Sociedad Legal de Gananciales compuesta por ambos, y a los apelados.
El Banco alegó que había otorgado un préstamo al Sr. Pedro Juan Montano Rosario y la Sra. Juanita López Rosario, en adelante los esposos Montano-López, por la cantidad de $69,003.52 de principal más intereses al 12% anual, con fecha de vencimiento 15 de octubre de 2000. Dicho préstamo estaba evidenciado por un pagaré de $40,000.00 depositado en prenda, que a su vez estaba garantizado con hipoteca constituida sobre la finca número 9,517, inscrita al folio 217 del tomo 250 de Monacillos, Registro de la Propiedad de San Juan, Sección Tercera. Alegó, además, el Banco, que los esposos Montano-López incumplieron con el contrato de préstamo al dejar de pagar las mensualidades vencidas desde el 1 de agosto de 1997 hasta la fecha de vencimiento del préstamo, adeudando $36,433.50 de principal más los intereses vencidos y la cantidad estipulada de $3,643.00 para costas, gastos y honorarios de abogados.
Los apelados fueron incluidos en la demanda por ser los dueños actuales de la propiedad grabada con la hipoteca en garantía del susodicho préstamo, aunque su título no aparece inscrito en el Registro de la Propiedad. Los apelados adquirieron la propiedad mediante escritura de compraventa autorizada por el notario Ubaldo Lugo Cruz, aquí apelante. Los esposos Montano-López y los apelados contestaron la demanda y alegaron las defensas afirmativas de pago en finiquito y que el demandante estaba impedido de ir en contra de sus propios actos. Alegaron además los apelados y los esposos Montano-López, que no existía deuda, pues había sido satisfecha mediante pago que se le hizo al Banco para la fecha en que los esposos Montano-López le vendieron la propiedad a los apelados por la cantidad de $40,000.00.
Los apelados le reclamaron a los esposos Montano-López por los daños que habían sufrido por no haber podido inscribir su título en el Registro de la Propiedad y el riesgo de perder la propiedad, así como los gastos relacionados con este litigio. Los apelados reconvinieron contra el Banco reclamándole la entrega del pagaré y los daños que habían sufrido por no haber podido inscribir su título en el Registro de la Propiedad.
Posteriormente, los apelados trajeron al notario Ubaldo Lugo Cruz como tercero demandado y alegaron que había sido contratado para efectuar la compraventa del inmueble, para que asesorara en todo lo relacionado al negocio, preparara la documentación relacionada, hiciera un estudio de título de la propiedad a adquirirse, se comunicara con los acreedores hipotecarios para que tramitara los pagos en su representación y cancelara las hipotecas en el Registro de la Propiedad.
Alegaron los apelados que el notario no había actuado de manera diligente, toda vez que no les advirtió que la propiedad que estaban comprando se encontraba grabada por una segunda hipoteca a favor del portador garantizando un pagaré de $40,000.00 suscrito por los esposos Montano-López quienes adeudaban una cantidad mayor al Banco, por lo que el pago de $40,000.00 no era suficiente para recuperar el pagaré. También alegaron los apelados que el incumplimiento del notario los había puesto en riesgo de perder la propiedad por la cual pagaron $98,000.00 y no habían podido inscribirla a su nombre en el Registro de la Propiedad libre de cargas y gravámenes.
Por su parte, el notario Ubaldo Lugo Cruz alegó que había sido contratado para realizar funciones estrictamente de notario y que cumplió con dicha encomienda. Alegó además el notario, que el Banco recibió $40,000.00 como saldo de la deuda luego de representar que esa era la cantidad adeudada y que no tenía encomienda de investigar los balances de las hipotecas que graban la propiedad. También alegó el notario que *1064 mantuvo a los apelados informados de la negativa del Banco a entregar el pagaré y que los esposos Montano-López actuaron de mala fe. El notario planteó que la reclamación en su contra estaba prescrita.
El Colegio de Abogados de Puerto Rico fue traído al pleito como tercero demandado en su carácter de fiador y alegó que la reclamación estaba prescrita o que en la alternativa, su responsabilidad se limitaba a la fianza existente. Los apelantes presentaron moción de desestimación en la que alegaron que las reclamaciones en su contra estaban prescritas. El Tribunal de Primera Instancia determinó que para adjudicar la referida defensa era necesario recibir prueba al respecto.
El juicio fue señalado para el 25 de julio de 2006. El día del juicio, el Banco y los esposos Montano-López anunciaron haber llegado a un acuerdo transaccional en cuanto a la demanda original. La transacción consistía en que los esposos Montano-López pagarían al Banco $25,000.00 en un plazo no mayor de 6 meses en saldo total de la deuda. En caso de incumplimiento por parte de los esposos Montano-López, el Banco solicitaría la ejecución de sentencia por estipulación permitiendo así ejecutar la hipoteca en garantía del pagaré para satisfacer la deuda de $40,351.69. En vista del acuerdo transaccional, los apelados desistieron de la reconvención contra el Banco.
El juicio se celebró para adjudicar la reclamación contenida en la demanda contra coparte presentada por los esposos Montano-López contra los apelados y la reclamación de los apelados contra los apelantes. El Tribunal de Primera Instancia declaró Ha Lugar la demanda contra terceros y condenó al Ledo. Ubaldo Lugo Cruz y a su fiadora, el Colegio de Abogados de Puerto Rico, a llevar acabo y realizar por su propia cuenta todas las gestiones de naturaleza legal y notarial conducentes a inscribir a favor de los apelantes, libre de cargas y gravámenes, la propiedad objeto de este litigio. Se ordenó además a los apelantes, pagar $1,000.00 de indemnización por sufrimientos y angustias mentales a los hermanos Santana-Meléndez más $4,000.00 en concepto de honorarios de abogados y $3,000.00 a los esposos Montalvo López por concepto de honorarios de abogado.
Inconformes con las determinaciones del Tribunal de Primera Instancia, los apelantes recurren ante este foro mediante recurso de apelación y hacen los siguientes señalamientos de error:

“(I) Erró el Tribunal de Primera Instancia al ver el caso de una demanda contra tercero, traído como una reclamación contingente bajo la Regla ¡4.2 de las de Procedimiento Civil independientemente de la reclamación principa!, cuando dicha demanda contra tercero dependía del resultado de la demanda original.

(2) Erró el Tribunal de Instancia al ver la vista en su fondo contra los terceros demandados cuando éstos no eran deudores solidarios de la reclamación del demandante.

(3) Erró el Tribunal de Primera Instancia al dictar una sentencia parcial adjudicando una controversia contingente, dejar pendiente otra reclamación sin hacer determinaciones de. hechos o de derecho de que no existe razón alguna de posponer la sentencia dictada.

(4) Erró el Tribunal de Primera Instancia al no dar crédito al testimonio del notario, testimonio que estuvo corroborado por la prueba documental.

(5) Erró el Tribunal de Primera Instancia al conceder daños morales a Santana-Morales sin prueba para ello.

(6) Erró el Tribunal de Primera Instancia al decir que un acta notarial no subsana el error clerical de decir la participación de los compradores.

*1065
(7) Erró el Tribunal de Primera Instancia al concluir que el Ledo. Lugo incurrió en dolo.

(8) Erró el Tribunal de Primera Instancia al imponer honorarios por temeridad al Ledo. Lugo siendo ello un abuso de discreción. ”

Este Tribunal emitió una Resolución en la que ordenó a los apelantes presentar la transcripción de los procedimientos del Tribunal de Primera Instancia y concedió a los apelados 30 días para presentar su alegato a contar desde la aprobación de la transcripción. La transcripción fue oportunamente presentada antes este foro. Aun cuando ha transcurrido el término con el que contaban los apelados para presentar su alegato, al día de hoy no han comparecido, por lo que resolveremos el recurso sin sus comparecencias.
II
Las alegaciones
Las Reglas de Procedimiento Civil permiten que en una demanda o contestación se puedan acumular todas las reclamaciones que un demandante o demandado tenga contra la parte adversa, estén o no relacionadas entre sí. Regla 14 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 14.
En estos casos, la Regla 14.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 14.2, dispone:
“Cuando se tratare de una reclamación que dependa para su ejercicio de que otra reclamación sea proseguida hasta su terminación, dichas dos reclamaciones podrán acumularse en el mismo pleito. E¡ tribunal no resolverá la reclamación contingente hasta tanto se resuelva la reclamación principal. ”
Nuestra Regla 43.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.5, autoriza a un tribunal, en pleitos que envuelvan reclamaciones o partes múltiples a dictar sentencia en cuanto a una o más de las reclamaciones o partes sin que tenga que disponer de la totalidad del pleito. Según el lenguaje claro de la misma, dicho tribunal puede dictar una sentencia parcial "...siempre que concluya expresamente que no existe razón para posponer dictar sentencia sobre tales reclamaciones hasta la resolución total del pleito y siempre que ordene expresamente que se registre sentencia".
La Regla 43.5 de las de Procedimiento Civil, supra, en su segundo párrafo, especifica que dicha sentencia parcial dictada se convierte en final para todos los fines en cuanto a la controversia en ella adjudicada, cuando se haga en ella la referida conclusión y orden expresa. Son, pues, dos los requisitos: el tribunal tiene que: (1) concluir expresamente que no existe razón para posponer dictar sentencia sobre tales reclamaciones o partes hasta la resolución total del pleito, y (2) ordenar expresamente que se registre la sentencia.
Nuestra jurisprudencia ha sostenido que estos requisitos son de estricto cumplimiento y que su incumplimiento tiene por consecuencia que la Resolución del tribunal no sea una determinación final, sino una interlocutoria revisable sólo mediante recurso de Certiorari. Véase Barrientos v. Gobierno de la Capital, 87 DPR 552 (1969); Garzot v. Tribunal Superior, 90 DPR 359 (1964). La rigidez en el cumplimiento de estos requisitos tiene como propósito evitar crear confusión sobre cuándo comienza a contar el término apelativo o de revisión. Barrientos v. Gobierno de la Capital, supra.
Actas de subsanación
En cuanto al uso del acta de subsanación, la Ley Notarial dispone, en su Artículo 29, que:
“Si se dejase de hacer constar por el notario algún dato o circunstancia dispuesto por este capítulo, o si se tratase de error en el relato de hechos presenciados por el notario que corresponda a éste consignar, podrán *1066 estas faltas ser subsanadas por el notario autorizante a sus expensas, por propia iniciativa o a instancia de cualquiera de las partes, por medio de acta notarial en que se haga constar el defecto o error, su causa y la declaración que lo subsana. ” 4 L.P.R.A. see. 2047.
La Regla 39 del Reglamento Notarial regula, específicamente, el otorgamiento de las actas de subsanación. La misma dispone, en lo aquí pertinente, que:
“Es acta de subsanación el instrumento que redacta el notario, sin intervención de las partes otorgantes y sin perjuicio de tercero, para corregir los defectos u omisiones de que adolezca un instrumento público previo. El notario hará constar en el acta que la subsanación obedece a datos o hechos que presenció o que de otro modo le constan personalmente y que no afectan el negocio jurídico. ” (Enfasis suplido.)
Los contratos constituyen la ley entre las partes, siempre que concurran los tres elementos indispensables para su validez; es decir, consentimiento de los contratantes, objeto cierto y causa de la obligación que se genera. Arts. 1230 y 1213 del Código Civil de Puerto Rico, 31 L.P.R.A. §§ 3451 y 3391.
Dolo
Respecto al dolo, el Artículo 1221 del Código Civil indica que:
“¡Hjay dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes, es inducido el otro a celebrar un contrato que, sin ellas, no hubiera hecho." 31 L.P.R.A. see. 3408. Constituye dolo, además, callar una circunstancia importante respecto al objeto del contrato. Márquez, v. Torres Campos, 1 1 1 DPR 854(1982).
El dolo se entiende como todo un complejo de malas artes, contrario a la honestidad e idóneo para sorprender la buena fe ajena, generalmente para beneficio propio, en que viene a resumirse el estado de ánimo de aquél que no sólo ha querido el acto, sino que, además, ha previsto y querido las consecuencias antijurídicas de él provenientes. Colón v. Promo Motor Imports, Inc., 144 D.P.R. 659 (1997).
El dolo no se presume. Quien reclama dicha conducta, deberá establecerla mediante prueba que satisfaga la conciencia del juzgador y no con meras conjeturas. El que lo invoca tiene que probar la falta intencional o mala fe de la persona a quien se le imputa, ya que la buena fe se presume. Citibank v. Dependable Ins. Co., Inc., 121 D.P.R. 503 (1988). Sin embargo, no significa necesariamente que tenga que probarlo con certeza matemática, sino que ‘jpluedc establecerse mediante inferencia o por evidencia circunstancial". Colón v. Promo Motors Imports, Inc., supra.
HI dolo en el incumplimiento de las obligaciones no está definido en el Código Civil. Sin embargo, en Canales v. Pan American, 112 D.P.R. 329 (1982), se señala que el dolo en el cumplimiento de las obligaciones se equipara con la mala fe y se compone de dos elementos: el intelectual o conciencia de una actuación inconforme y el volitivo o voluntad de actuar de dicho modo inconforme. El dolo, en el incumplimiento contractual, es la negativa consciente y voluntaria del deudor a cumplir su obligación, sabiendo que realizará un acto injusto. Mayagüez Hilton v. Humberto Betancourt, 2002 J.T.S. 29; Colón v. Promo Motor Imports, Inc., supra: Canales v. Pan American, supra; Márquez v. Torres Campos, 111 D.P.R. 854 (1982).
Ello supone que el obligado tenga conocimiento de la obligación que sobre él pesa, del acto o abstención que va a realizar y de las consecuencias que ello produce. “Es decir, el dolo no implica, necesariamente, un designio malévolo del deudor, sólo conocimiento del hecho de su propio incumplimiento, consciente de que ha de afectar la expectativa del acreedor. ” Mayagüez Hilton v. Humberto Betancourt, supra.
*1067 “Tanto bajo el dolo en la formación del contrato..., como en el dolo en el cumplimiento de la obligación corresponde a quien reclama dicha conducta dolosa la responsabilidad de la prueba". Colón v. Promo Motor Imports, Inc., supra; Canales v. Pan American, supra. Es una cuestión de hecho que no se sustenta con la mera alegación del reclamante, sin que haga falta aportar prueba, la cual deberá ser valorada exclusivamente por el juez de instancia. Mayagüez Hilton Corp. v. Humberto Betancourt, supra, citando A. De Cossio y Corral, El Dolo en el Derecho Civil, Madrid, 1955, pág. 353; J. Manresa, Comentarios al Código Civil Español, Madrid, 1967, t. VIII, Vol. I, pág. 218.
Honorarios de Abogado
La Regla 44.1 (d) de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1 (d), dispone:

“Honorarios de abo gado.-En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. ”

Los honorarios de abogado se conceden a la parte. Son parte de la sentencia a favor del litigante y no se conceden para compensar al abogado. Colón v. Amer. Life & Cas. Co., 110 D.P.R. 772, 775 (1981). Por otro lado, la imposición de honorarios de abogado y su cuantía es discrecional. Revlon Realistic, Inc. v. Las Amèricas Trust Company, 135 D.P.R. 363, 376 (1994).
El concepto de temeridad al que alude la Regla 44.1(d), supra, no ha sido definido pero el Tribunal Supremo ha ido perfilando sus contornos. José A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Publicaciones J.T.S., Tomo II, 2000, a la pág. 729. La conducta temeraria sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exorbitante para su peculio. Elba A.B.M. v. U.P.R., 125 D.P.R. 299(1990).
La determinación de si un litigante ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador, pero la partida concedida al amparo de dicha determinación puede ser variada en apelación si la misma es excesiva, exigua o constituye un abuso de discreción. Ramírez Anglada v. Club Cala de Palmas, 123 D.P.R. 339, 349-350(1989).
En el cálculo de los honorarios de abogados, el tribunal debe tener en cuenta factores como la naturaleza del litigio, las cuestiones de derecho envueltas en el mismo, la cuantía en controversia, el tiempo invertido, los esfuerzos y actividad profesional que hayan tenido que desplegarse y la habilidad y reputación de los abogados envueltos. Corpak, Art Printing v. Ramallo Brothers, 125 D.P.R. 724, 738 (1990); Velázquez Ortiz v. U.P.R., 128 D.P.R. 234, 238 (1991).
Ahora bien, este cálculo no tiene que ser equivalente al valor real de los servicios prestados o pagados, sino aquella suma que en consideración al grado de temeridad y demás circunstancias el tribunal concluye que representa razonablemente el valor de esos servicios. Feliciano Polanco v. Feliciano González y Otros, 147 D. P.R. 722 (1999). El grado de intensidad de la conducta temeraria es el criterio rector al determinar el tribunal la cuantía de los honorarios de abogado.
Es principio establecido que un tribunal apelativo está en la misma posición que el Tribunal de Primera Instancia en cuanto a la apreciación de prueba documental o pericial. Castrillo v. Maldonado, 95 DPR 885, 889 (1968). No obstante, los foros apelativos no intervendrán con las determinaciones de hechos ni con la apreciación de la prueba que realizan los foros de primera instancia, en ausencia de pasión, prejuicio, error manifiesto o parcialidad. Lugo Ortiz, v. Mun. de Caguas, 2004 J.T.S. 171, a las págs. 348-349, 163 D.P.R._ *1068 (2004).
III
Plantean los apelantes que erró el Tribunal de Primera Instancia al entender en una demanda contra tercero cuando su proceder dependía del resultado de la demanda original. Señalan, además, los apelantes, que erró el Tribunal de Primera Instancia al celebrar la vista contra terceros cuando no eran deudores solidarios y haber adjudicado una controversia contingente, dejando pendiente otra reclamación sin hacer determinaciones de que no existe razón alguna para posponer la Sentencia dictada. Al estar los tres señalamientos de error intrínsecamente relacionados los discutiremos en conjunto.
En el caso de marras, la reclamación inicial fue una acción en cobro de dinero y ejecución de hipoteca presentada por el Banco contra los apelados y los esposos Montano-López. Los apelados presentaron una demanda contra tercero en la que incluyeron en el pleito a los apelantes, el Ledo. Lugo y el Colegio de Abogados. La reclamación inicial fue transigida por los esposos Montano-López y los apelados. Los esposos Montano-López se comprometieron a pagar la cantidad de $25,000.00 en el término de 6 meses y se estipuló que en caso de incumplimiento, el Banco solicitaría ejecución por estipulación de la hipoteca que graba la propiedad de los apelados.
El Banco desistió de su reclamación contra los apelados y los esposos Montano-López. Los apelados y los esposos Montano-López desistieron de su reconvención contra el Banco. Las estipulaciones de las partes pusieron fin a la reclamación de cobro de dinero y ejecución de prenda instada por el Banco. El Banco se comprometió a entregar el pagaré a los esposos Montano-López luego de que éstos cumplieran con el pago transaccional en su totalidad. Las partes firmantes del acuerdo transaccional manifestaron que su intención era que los apelantes no quedaran relevados de responsabilidad ni se beneficiaran de manera alguna de la transacción.
Luego de celebrado el juicio en su fondo en cuanto a la reclamación contra tercero y la demanda contra coparte, el Tribunal de Primera Instancia dictó Sentencia. La reclamación inicial fue desistida por las partes, por lo que no había impedimento para que el Tribunal de Primera Instancia dictara Sentencia en cuanto a la reclamación contra tercero presentada contra los apelantes y la demanda contra coparte. El Tribunal de Primera Instancia cumplió con lo que dispone la Regla 14.2 de las de Procedimiento Civil.
Aun cuando en el presente pleito existen múltiples controversias y múltiples partes, la Sentencia dictada por el Tribunal de Primera Instancia no fue parcial. La totalidad de las controversias del pleito fueron adjudicadas en la Sentencia apelada, por lo que no es de aplicación la Regla 43.5 de las de Procedimiento Civil, supra. Ante estas circunstancias, no era necesario que el Tribunal de Primera Instancia hiciera determinación de hecho o derecho de que no existe razón alguna para posponer la sentencia apelada. Actuó correctamente el Tribunal de Primera Instancia.
Señalan los apelantes que erró el Tribunal de Primera Instancia al no dar crédito al testimonio del notario, testimonio que estuvo corroborado por la prueba documental. También alegan los apelantes que erró el Tribunal de Primera Instancia al imponer honorarios por temeridad al Ledo. Lugo, siendo ello un abuso de discreción.
Sabido es que las determinaciones de hechos y la adjudicación de credibilidad emitidas por el Tribunal de Primera Instancia son merecedoras de gran deferencia por parte de los tribunales apelativos. En ausencia de pasión, prejuicio, parcialidad o error manifiesto, el tribunal apelativo no intervendrá con las determinaciones de hechos y la apreciación de la prueba de los tribunales de instancia. Álvarez de Choudens v. Rivera Vázquez, 2005 J.T.S. 90, 165 D.P.R._.
El Tribunal de Primera Instancia, en uso de su discreción, determinó que el apelante fue temerario en el *1069 trámite de la litigación, toda vez que pudo minimizar los daños que sufrieron los apelados y no lo hizo, que se defendió injustificadamente y no aceptó francamente su responsabilidad.
Dado a que los apelantes no han presentado evidencia alguna tendente a establecer pasión, prejuicio, parcialidad o error manifiesto, reconocemos deferencia a la determinación de temeridad y la adjudicación de credibilidad hecha por el Tribunal de Primera Instancia al testimonio del Lie. Lugo.
Alegan también los apelantes que erró el Tribunal de Primera Instancia al concluir que el Ledo. Lugo incurrió en dolo. Señalan, además, los apelantes que erró el Tribunal de Primera Instancia al conceder daños morales a Santana-Morales sin prueba para ello.
El Tribunal de Primera Instancia determinó que el Lie. Lugo fue contratado para efectuar un estudio de título, investigar sobre deudas de contribuciones territoriales, gestionar de los acreedores hipotecarios el balance pendiente de pago, redactar la escritura de compraventa, pagarle lo adeudo a los acreedores hipotecarios y presentar las escrituras de Cancelación de Hipoteca y Compraventa en el Registro de la Propiedad. El Lie. Lugo no cumplió con gestionar de los acreedores hipotecarios el balance pendiente de pago. La cantidad enviada por el Lie. Lugo al Banco resultó ser insuficiente para cumplir con la totalidad de la deuda garantizada por hipoteca que graba el inmueble en controversia. El Banco le informó al Lie. Lugo que no podía enviarle el pagaré para ser cancelado, pues la deuda estaba vigente.
El Lie. Lugo estaba informado de que no podía ser posible la cancelación de la hipoteca que grava el inmueble propiedad de los apelados. Era el deber del Lie. Lugo informar a los apelados sobre esta situación y hacer las gestiones pertinentes para cumplir con sus obligaciones contractuales. Como discutiéramos anteriormente, el dolo no implica necesariamente un designio malévolo del deudor. El conocimiento del hecho de su propio incumplimiento, consciente de que ha de afectar la expectativa del acreedor, es suficiente para que se configure el dolo. El Lie. Lugo tenía conocimiento de que no había cumplido con sus responsabilidades contractuales y que obviamente su incumplimiento afectaría la expectativa de los apelados. El Lie. Lugo cometió dolo en el cumplimiento de sus obligaciones contractuales.
El Artículo 1054 del Código Civil de Puerto Rico, 31 L.P.R.A. § 3018, dispone que quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas. En caso de dolo, responderá el deudor de todos los daños que conocidamente se deriven de la falta de cumplimiento de la obligación. Véase Artículo 1060 del Código Civil, 31 L.P.R.A. § 3024.
Ante el incumplimiento del Lie. Lugo, los apelados se vieron envueltos en este pleito y al presente se exponen a que su propiedad sea ejecutada en caso de que los esposos Montano-López incumplan con el contrato de transacción. No es difícil colegir que el riesgo de perder una propiedad y exponerse a los rigores de un pleito como el de autos, por el incumplimiento contractual de un tercero, le ha causado sufrimientos y angustias mentales a los apelados, por los que deben de ser indemnizados. El Tribunal de Primera Instancia impuso a los apelantes el pago de $ 1,000.00 en concepto de sufrimientos y angustias mentales, cantidad que es razonable, dado a las circunstancias del caso. Cabe destacar que los apelados entraron al caso como la Sucesión del Sr. Mario Santana Martínez, por lo que la partida en concepto de sufrimientos y angustias mentales formarán parte del caudal hereditario.
Señalan los apelantes que erró el Tribunal de Primera Instancia al decir que un acta notarial no subsana el error clerical de especificar la participación de los compradores.
La Regla 39 del Reglamento Notarial permite que se subsanen los errores cometidos en un instrumento público, siempre que no afecten el negocio jurídico mediante el otorgamiento de un acta notarial. Los elementos *1070 de los contratos son: consentimiento, objeto y causa. En el caso de autos se pretende subsanar la omisión de incluir la proporción en que adquirieron la propiedad Mario Santana Martínez y los esposos Héctor Santana y Aida Meléndez. La proporción en que adquieren una propiedad los comparecientes en una escritura de compraventa es parte de 3a causa del contrato, por lo que su omisión no puede ser subsanada mediante acta. Por ello, tampoco erró el Tribunal de Primera Instancia en este punto.
IV
Por los fundamentos que anteceden, CONFIRMAMOS la Sentencia apelada.
Lo acuerda y manda este Tribunal y lo certifica la Secretaria.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones